## STATE OF CONNECTICUT *v.* MARSHALL CRENSHAW
## (13178)

PETERS, C. J., HEALEY, CALLAHAN, COVELLO and SANTANIELLO, Js.

Argued December 14, 1988—decision released March 7, 1989

*A. Paul Spinella,* for the appellant (defendant).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief, was *Dennis O'Connor,* assistant state's attorney, for the appellee (state).

COVELLO, J. The defendant, Marshall Crenshaw, appeals from his conviction of murder in violation of General Statutes § 53a-54a.[1] The relevant facts are as follows.

On April 21, 1985, the defendant was arrested and charged with the murder of his ten month old daughter, Dale-Lyn Nichole Crenshaw. Following a hearing in probable cause, the defendant pleaded not guilty and elected to be tried by a jury. On December 16, 1985, the trial court, *Stoughton, J.*, ordered a competency evaluation for the defendant pursuant to General Statutes § 54-56d.[2] The evaluation was conducted by a clinical team from the department of mental health comprised of a psychiatrist, a pyschiatric social worker and a psychologist. In its report to the court, the team was unanimous in its opinion that the "defendant's presumption of competency has been sustained through

---

[1] General Statutes § 53a-54a provides: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

[2] General Statutes § 54-56d provides in part: "COMPETENCY TO STAND TRIAL. (a) COMPETENCY REQUIRED. DEFINITION. A defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense."

this examination, and that he both understands the legal proceedings against him and can cooperate with counsel in his own defense." On December 31, 1985, the trial court, *Barall, J.*, ruled that the defendant was competent to stand trial.

On March 21, 1986, the defendant's counsel, Richard Kelly, filed a motion to withdraw from the case. Attorney Kelly informed the court that if he were "forced to proceed in this particular case, it may well be placing counsel in an irreconcilable ethical conflict."[3] The trial court, *Barall, J.,* denied this motion.

On April 17, 1986, two days after the trial began, the defendant pleaded guilty to murder under the doctrine established in *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).[4] A plea canvass followed. On April 21, 1986, the defendant filed a pro se motion seeking to withdraw his prior guilty plea, electing a trial and requesting the appointment of a special public defender. The trial court, *Quinn, J.,* denied this motion.

On May 14, 1986, the trial court granted the defendant's motion requesting a diagnostic psychiatric examination pursuant to General Statutes § 17-244.[5] A

---

[3] Attorney Kelly submitted to the court the following written statement: "I will represent the following to Judge Barall in chambers: 1. that Marshall Crenshaw has told me and others employed by the defense, on more than one occasion, that he committed the acts that caused the death of Dale-Lyn; 2. that on 3/18/86, at a conference which I had with Marshall Crenshaw at the Hartford Correctional Center, I was told by Marshall Crenshaw that he intends to testify in his trial that he did not do any of the acts that caused the death of Dale-Lyn and, rather, that Dale-Lyn's death was caused by one Susan Lard."

[4] "An *Alford* plea allows a defendant in a criminal case to consent to punishment as if he were guilty without his express acknowledgment of his guilt." *State* v. *Watson,* 198 Conn. 598, 601 n.3, 504 A.2d 497 (1986).

[5] General Statutes § 17-244 provides: "CERTAIN CONVICTED PERSONS TO BE EXAMINED. REPORT AND RECOMMENDATION. (a) Except as provided in section 17-255 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional

diagnostic team at the Whiting Forensic Institute concluded that the defendant "was not mentally ill to an extent that he posed a danger to himself or to others. The team decline[d] to recommend probation and return[ed] the defendant for sentencing in accordance with his conviction." On August 20, 1986, the trial court, *Quinn, J.,* sentenced the defendant to a term of twenty-five years of incarceration.

The defendant claims on appeal that the trial court erred in: (1) denying his motion to withdraw his guilty plea; (2) failing to conduct an evidentiary hearing to determine the factual basis for his motion to withdraw his guilty plea; and (3) denying defense counsel's request to withdraw from the case. We find no error.

Institution at Somers, or of a sex offense involving (1) physical force or violence, (2) disparity of age between an adult and a minor or (3) a sexual act of a compulsive or repetitive nature, may if it appears to the court that such person is mentally ill and dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the institute. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the institute for additional examination or should be sentenced in accordance with the conviction. Such examination shall be conducted and the report made to the court not later than fifteen days after the order for the examination. Such examination may be conducted at a correctional facility if the defendant is confined or it may be conducted on an outpatient basis at the institute or other appropriate location. If the report recommends additional examination at the diagnostic unit, the court may, after a hearing, order the convicted defendant committed to the diagnostic unit of the institute for a period not to exceed sixty days, except as provided in section 17-245 provided the hearing may be waived by the defendant. Such commitment shall not be effective until the director certifies to the court that space is available at the diagnostic unit. While confined in said diagnostic unit, the defendant shall be given a complete physical and psychiatric examination by the staff of the unit and may receive medication and treatment without his consent. The director shall have authority to procure all court records, institutional records and probation or other reports which provide information about the defendant.

"(b) The request for such examination may be made by the state's attorney or assistant state's attorney who prosecuted the defendant for an offense

I

The defendant first claims that the trial court erred in denying his motion to withdraw his guilty plea. Practice Book § 721 specifies circumstances under which a defendant may withdraw a guilty plea after it has been entered.[6] "[O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its

specified in this section, or by the defendant or his attorney in his behalf. If the court orders such examination, a copy of the examination order shall be served upon the defendant to be examined.

"(c) Upon completion of the physical and psychiatric examination of the defendant, but not later than sixty days after admission to the diagnostic unit, a written report of the results thereof shall be filed in quadruplicate with the clerk of the court before which he was convicted, and such clerk shall cause copies to be delivered to the state's attorney, to counsel for the defendant and to the office of adult probation.

"(d) Such report shall include the following: (1) A description of the nature of the examination: (2) a diagnosis of the mental condition of the defendant; (3) an opinion as to whether the diagnosis and prognosis demonstrate clearly that the defendant is actually dangerous to himself or others and requires custody, care and treatment at the institute; and (4) a recommendation as to whether the defendant should be sentenced in accordance with the conviction, sentenced in accordance with conviction and confined in the institute for custody, care and treatment, placed on probation by the court or placed on probation by the court with the requirement, as a condition to probation, that he receive outpatient psychiatric treatment."

[6] Practice Book § 721 provides: "—GROUNDS

"The grounds for allowing the defendant to withdraw his plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Sec. 711;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the court had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion." *Szarwak* v. *Warden,* 167 Conn. 10, 23, 355 A.2d 49 (1974). "The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty." *State* v. *Slater,* 169 Conn. 38, 46, 362 A.2d 499 (1975).

The defendant argues that he did not intelligently and voluntarily enter his plea because at the time he entered it he was simply following his attorney's instructions and did not understand that he would receive a minimum sentence of twenty-five years. He claims, therefore, that he has a plausible reason for withdrawing his plea. We disagree.

Due process requires that a plea be entered voluntarily and intelligently. *Boykin* v. *Alabama,* 395 U.S 238, 243 n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *Oppel* v. *Lopes,* 200 Conn. 553, 556, 512 A.2d 888 (1986); *State* v. *Lopez,* 197 Conn. 337, 341, 497 A.2d 390 (1985). "Because every valid guilty plea must be demonstrably voluntary, knowing and intelligent, we require the record to disclose an act that represents a knowing choice among available alternative courses of action, an understanding of the law in relation to the facts, and sufficient awareness of the relevant circumstances and likely consequences of the plea." *State* v. *Watson,* 198 Conn. 598, 604, 504 A.2d 497 (1986). "A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances." *State* v. *Wright,* 207 Conn. 276, 287, 542 A.2d 299 (1988).

The trial court, *Quinn, J.,* canvassed the defendant concerning the voluntariness of his plea pursuant to Practice Book §§ 711 through 713 and *Boykin* v. *Ala-*

*bama,* supra. This canvass "necessarily implies that [the trial court] has made an inquiry into the defendant's competence to plead." *State* v. *Watson,* supra. An examination of the plea canvass reveals the following: The defendant entered an *Alford* plea. The defendant explained to the court that an *Alford* plea "means that they have enough evidence against you." The court expanded upon the defendant's definition[7] and asked him if he had discussed this with his attorney. The defendant said that he had and that he was satisfied with the advice that his attorney had given him. The court then asked the defendant if he understood that he was giving up his right to a trial by court or jury, along with his right to face and cross-examine witnesses against him, and to bring in any witnesses to testify on his behalf, and that by entering this plea he was incriminating himself and waiving his right against self-incrimination. The defendant responded that he understood the ramifications involved. The state's attorney then delineated the factual basis that would be produced to establish the defendant's guilt.[8]

The court then asked the defendant if he was familiar with the maximum penalty that the court could impose on a conviction of murder in the first degree. The defendant responded that it was "sixty-years." The court then asked the defendant if he understood what the minimum sentence would be. He responded that it would be "twenty-five." The court then read the defendant the definition of murder.

---

[7] The trial court stated: "Essentially that is true. Let me ask you some questions and maybe we can clarify it. What you're telling this Court is that you're entering this plea of guilty because you feel that if the State were to proceed and present evidence to a jury against you, that the probability would be that the jury would find you guilty of the charges, is that correct?" The defendant responded, "Yes, your Honor."

[8] The state proffered the following factual basis for the plea: On April 20, 1985, the defendant and his ten month old daughter were in their apartment at 40 Olcott Street in Manchester. While the child's mother was out of the apartment the defendant suffocated his daughter by pushing her head into the mattress of her crib.

Finally the court asked the state if there was an agreement as to the penalty to be imposed. The state informed the court that it would be making a recommendation at the time of sentencing of twenty-five years. The defendant stated, in response to the court's inquiry, that he knew this at the time he entered his plea. The defendant also informed the court that he was not under any threats to plead guilty, that his attorney had been a "great lawyer" and had done everything possible to protect his interests.

In concluding the plea hearing, the court stated that it "will make a finding that [the defendant] has been advised by competent counsel, he understands his constitutional rights and has waived those rights. He understands fully that he has a right to a trial by Court or jury and has waived it."

On April 21, 1986, the defendant mailed to the court a pro se motion to withdraw his guilty plea. In that motion he stated that he had not intelligently and competently entered his plea and that his attorney had led him astray. The defendant claimed that he had been led to believe that he would receive substantially less than the twenty-five year sentence. On May 7, 1986, a hearing was held on this motion and the trial court, *Quinn, J.,* subsequently denied it.

A review of all the relevant circumstances clearly indicates that the defendant had intelligently and voluntarily entered his *Alford* plea. The trial court's determination on December 31, 1985, that he was competent to stand trial, lays to rest any question about the defendant's capacity to comprehend the charges against him and the consequences of his plea.

Furthermore, aside from his bald assertion, the defendant produced no evidence that he was simply following his attorney's instructions when he entered his plea. "It is not enough for the defendant to claim that

he was told what to say by his lawyer. To warrant consideration, the defendant must allege and provide facts which would justify permitting him to withdraw his plea . . . . " *State* v. *Deboben,* 187 Conn. 469, 474, 446 A.2d 828 (1982).

Finally, the record does not support the defendant's claim that he was confused at the time he entered the plea. Significantly, it was the defendant and not the trial court who first mentioned that the minimum sentence for a conviction of murder is twenty-five years. Additionally, the defendant told the court that he knew that the state would be recommending a twenty-five year prison term and that he had known this at the time he entered his plea. We are therefore unpersuaded when he now claims that he did not understand that he would receive a twenty-five year sentence.

## II

The defendant next claims that the trial court erred in failing to hold an evidentiary hearing on his motion to withdraw his guilty plea. He argues that the voluntariness of his plea is questionable in light of his mental capabilities and the inadequacy of the trial court record. We disagree.

"For the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true. If such allegations furnish a basis for withdrawal of the plea under [Practice Book] § 721, and are not conclusively refuted by the record of the plea proceedings and other information contained in the court file, then an evidentiary hearing is required." *State* v. *Torres,* 182 Conn. 176, 185–86, 438 A.2d 46 (1980). In light of the record of the plea canvass, the hearing on the motion to withdraw the plea, and examination of the court file, we conclude that the defendant's claim of error is conclusively refuted within the meaning of *State* v. *Torres,* supra.

The trial court conducted a complete canvass in accordance with the rules of practice and was satisfied that the defendant's plea had been knowingly and voluntarily entered. As noted above, the defendant's dialogue with the trial court at the plea canvass furnishes a more than adequate basis for determining his full understanding of his plea and its ramifications.

Finally, three months prior to the defendant entering his plea, the trial court ordered the commissioner of mental health to effect a competency examination on the defendant. In a unanimous opinion a clinical team found that the defendant "both understands the legal proceedings against him and can cooperate with counsel in his own defense." In light of this evaluation, we are unpersuaded that the trial court had an insufficient record upon which to base its decision.

We find, therefore, that the defendant failed "to sustain his burden of coming forward with sufficiently specific unrefuted factual allegations to require an evidentiary inquiry into his alleged incompetence at the time of the acceptance of his guilty [plea]." *State* v. *Watson,* supra, 613–14. Accordingly, we find no error.

### III

The defendant next claims that the trial court erred in denying his attorney's motion to withdraw from the case. The defendant argues that as a result, he did not receive representation free of conflict because his attorney believed him guilty. He further claims that his counsel was ineffective in his representation. We reject both claims.

"Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood* v. *Georgia,* 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981); *State* v. *Festo,*

191 Conn. 622, 626–27, 469 A.2d 1181 (1983). The record here is clear that the reason Attorney Kelly asked to withdraw from the case was not because he believed that the defendant was guilty as the defendant claims, but because the defendant had told him that he, the defendant, wanted to perjure himself on the witness stand. Any conflict which may have existed between the defendant and his attorney "was one imposed on the attorney by the client's proposal to commit the crime of fabricating testimony . . . . " *Nix* v. *Whiteside,* 475 U.S. 157, 173, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986). Such a conflict, when created by the defendant, does not require the appointment of new counsel. See *State* v. *Gonzalez,* 205 Conn. 673, 684, 535 A.2d 345 (1987); *State* v. *Drakeford,* 202 Conn. 75, 84, 518 A.2d 1194 (1987).

As the trial court noted, any counsel representing the defendant would have been confronted with the same dilemma. Allowing this attorney, and then all subsequent attorneys, to withdraw from this case would have impaired the defendant's right to be represented by counsel. This we cannot condone.

"Whether the circumstances warrant the appointment of new counsel is within the discretion of the trial court." *State* v. *Gonzalez,* supra, 683. "[A]bsent a factual record revealing an abuse of [the court's] discretion, the court's failure to allow new counsel is not reversible error." *State* v. *Drakeford,* supra, 83; *El Idrissi* v. *El Idrissi,* 173 Conn. 295, 302–303, 377 A.2d 330 (1977). We note that the motion to withdraw was made and denied in advance of the defendant's trial. Later, at the time of the plea canvass, the defendant expressed his complete satisfaction with the advice he had received from his attorney. We conclude, therefore, that the trial court did not abuse its broad discretion in denying defense counsel's request to withdraw and the defendant was not thereby prejudiced.

The defendant's further claim of ineffective assistance of counsel is inappropriate on a direct appeal. Such claims are properly pursued on a petition for a writ of habeas corpus, or on a petition for a new trial. *State v. Williamson,* 206 Conn. 685, 707, 539 A.2d 561 (1988); *State v. Gonzalez,* supra; *State v. Tirado,* 194 Conn. 89, 92–93, 478 A.2d 606 (1984); *State v. Mason,* 186 Conn. 574, 578–79, 442 A.2d 1335 (1982). Accordingly, we do not consider it.

We find no error.

In this opinion the other justices concurred.