## STATE OF CONNECTICUT *v.* SHERAIL COOPER
## (AC 18008)

Lavery, Hennessy and Dupont, Js.

Argued June 7—officially released September 28, 1999

*Theresa M. Dalton*, assistant public defender, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Joan K. Alexander*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Sherail Cooper, appeals from the judgment of conviction, rendered after her

guilty plea, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3)[1] and risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21.[2] On appeal, the defendant claims, with respect to her motion to withdraw her guilty plea, that the trial court improperly failed to appoint substitute counsel to assist her with her claim of ineffective assistance of counsel and failed to hold an evidentiary hearing on that claim. We affirm the judgment of the trial court.

The following facts and procedural history are necessary for our review. On March 9, 1997, paramedics were called to 90 Nelton Court in Hartford, where they found two year old Andre Shirley, Jr., the defendant's son, in an extremely flaccid condition with shallow respirations and a very low heart rate. The defendant reported that her son had suffered a seizure while eating. Shirley was transported to Saint Francis Hospital and Medical Center and then to Connecticut Children's Medical Center. The child's treating physicians found that he had sustained three distinct blows to his head, one of which was powerful enough to tear his sagittal sinus vein. Shirley died at the Connecticut Children's Medical Center on March 18, 1997.

The defendant was the child's sole caregiver at the time of his injuries. She was arrested on April 3, 1997, and charged with capital felony in violation of General

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured . . . or does any act likely to impair the health . . . of any such child . . . shall be guilty of a class C felony."

Statutes § 53a-54b (9) and risk of injury to a child in violation of § 53-21.

A probable cause hearing was held, but not completed, on various days in July, 1997. The defendant reported to an investigating police officer that Shirley was injured when he fell backward while trying to get onto a city bus. The defendant's explanations were not consistent with the severity of the child's injuries. Betty Spivack, a physician specializing in pediatric critical care and child abuse, had treated Shirley and testified that his head injuries were consistent with those incurred in a fall from a ten to fifteen story building.

On September 15, 1997, the defendant waived her right to a probable cause hearing[3] and pleaded guilty

[3] The trial court canvassed the defendant concerning her waiver of her probable cause hearing.

"The Court: Sherail [Cooper], let me ask a couple of questions concerning the probable cause. This court started a probable cause hearing, or that is, testimony. Has counsel explained to you what the purpose of a probable cause hearing is?

"The Defendant: Yes.

"The Court: All right. Basically, the court will hear evidence and the court would have to make a decision on whether the state could proceed on the charges that were alleged in the information. Under our law, you have a right to a probable cause hearing. It is guaranteed by our state, and counsel is indicating to me that you wish to waive your hearing in probable cause. Is that true?

"The Defendant: Yes.

"The Court: Now, have you had sufficient time to discuss this with your attorney before you asked for this waiver?

"The Defendant: Yes.

"The Court: And you understand that once you waive the hearing in probable cause you cannot ask for it once again?

"The Defendant: Yes.

"The Court: Now, do you feel in any way forced to make this decision?

"The Defendant: No.

"The Court: And I know you're in the lockup, but have you had any drugs, alcohol or medicine today?

"The Defendant: No.

"The Court: Have you had sufficient time to discuss this waiver over with counsel?

"The Defendant: Yes.

to manslaughter in the first degree and risk of injury to a child as alleged in a substitute information the state filed that day.[4] In November, 1997, two days prior to

"The Court: You feel satisfied with their advice?

"The Defendant: Yes.

"The Court: And you're asking this court to waive the probable cause hearing?

"The Defendant: Yes. . . .

"The Court: All right. The court will make a finding that the waiver of the hearing in probable cause by [the defendant] has been voluntary. She has had sufficient time to discuss this with both of her attorneys, and the court will make the finding of adequate waiver. All right."

[4] The trial court canvassed the defendant as to her guilty plea as follows.

"The Court: All right. Miss Cooper, I'm going to ask you a series of questions concerning both of these pleas here this afternoon. If you do not understand anything or have any questions, you can certainly ask the court or ask your attorneys who are standing with you about this particular canvass. The purpose of the canvass is basically to make sure that you understand each of the charges and the consequences of the charges, and some of the constitutional rights you're giving up by pleading here this afternoon. All right. And some of the questions will be similar to the ones I've just asked you. Miss Cooper, do you feel in any way forced to make both of these pleas here to both the manslaughter in the first degree [charge] and to the risk of injury charge?

"The Defendant: No.

"The Court: All right. And again, I understand you're incarcerated. Have you had any medicine, drugs or alcohol today?

"The Defendant: No.

"The Court: All right. Do you understand you have the right to maintain your innocence, plead not guilty, to make an election [for trial] to a judge or a jury [and that] witnesses could have been subject to cross-examination? You could have taken the stand to defend yourself, if you so chose, but basically because you're pleading here this afternoon, you're waiving all of those constitutional rights. You understand that?

"The Defendant: Yes.

"The Court: That applies to both charges. Now, the charges that you've pleaded to today are manslaughter in the first degree, which is a class B felony that carries one to twenty years [in prison and a fine of] ten thousand dollars or both. The [offense] which you plead guilty to today is [that] a person is guilty of manslaughter in the first degree when, under circumstances evincing an extreme indifference to human life, she recklessly engages in conduct [that] creates a grave risk of death to another person, and thereby causes the death of another person. That's the definition of manslaughter in the first degree. Do you understand that?

"The Defendant: Yes.

"The Court: Now on the [charge of] injury or risk of injury to, or impairing

her sentencing, the defendant moved for a continuance to afford her an opportunity to reevaluate her plea, her attorneys' advice and the fairness of her plea agreement

the morals of a child, it's § 53-21 and states that any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals are likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both. Do you understand that?

"The Defendant: Yes.

"The Court: In this particular case, to run these [sentences] consecutively . . . which is the offer of the state, would mean a maximum sentence of thirty years to serve. Do you understand that?

"The Defendant: Yes.

"The Court: Is that the sentence you agreed to when you talked to both of your attorneys?

"The Defendant: Yes.

"The Court: All right. And Miss Cooper, you're a citizen of the United States?

"The Defendant: Yes.

"The Court: All right. And have you had sufficient time to discuss this plea with both of your attorneys?

"The Defendant: Yes.

"The Court: You feel comfortable with this court's taking these pleas this afternoon?

"The Defendant: Yes.

"The Court: Now, the [state has] indicated its factual basis on the record. Now, after talking to both of your attorneys did you come to the conclusion that you had to take these two pleas in order to ensure the sentence [that has] been offered by the state, that is, the thirty years to serve versus the consequences of going to trial [which means you could have served the maximum of life without parole]? Is that your understanding?

"The Defendant: Yes.

"The Court: Now, do you have any questions through either your attorneys or of this court of this particular canvass today?

"The Defendant: No. . . .

"The Court: All right. Do you have any questions of your attorneys, Miss Cooper?

"The Defendant: No. . . .

"The Court: All right. Based upon those facts added by the state, Miss Cooper, does that change your pleas before this court this afternoon?

"The Defendant: No. . . .

"The Court: Miss Cooper, you're satisfied by the counsel given to you both by Mr. [Patrick] Culligan and Mr. [Kenneth] Simon?

"The Defendant: Yes.

in view of contemporaneous events in Massachusetts.[5]
On December 4, 1997, the defendant filed a motion to

"The Court: Once again, Miss Cooper, do you have any questions of this particular court before I accept your pleas here today?

"The Defendant: No.

"The Court: You understand that the court will set this matter down for a presentence investigation?

"The Defendant: Yes.

"The Court: That in approximately six weeks the court will bring you back for a sentencing, that the court will basically have the probation department prepare a presentence investigation for this court's perusal and information. All right.

"The court will make the following findings: That both pleas entered by [the defendant] here this afternoon have been made voluntarily by her. She understands the crimes charged and the consequences of her pleas. [She has] indicated this to this court. [She has] had effective assistance of counsel. [She has] admitted the factual basis of both the [charges] before this particular court.

"The court will make a finding of guilty of manslaughter in the first degree and make a finding of guilty of risk of injury for impairing the morals of a child."

[5] Defense counsel was referring to the case of *Commonwealth* v. *Woodward*, 427 Mass. 659, 694 N.E.2d 1277 (1998) (conviction after trial reduced to involuntary manslaughter from second degree murder and sentence to time served).

The following colloquy took place during argument on the defendant's motion for a continuance.

"[Defendant's Counsel]: Your Honor, in support of the defendant's motion for a continuance, I would represent to the court that in preparation for the scheduled sentencing of [the defendant] today, her defense team met with her last week. And at that time she indicated to us . . . at the conclusion of our rather lengthy conversation she requested of us that we file this motion for the reasons which are enumerated in the motion, Your Honor. Because she feels that [she has] not had, at this point, appropriate time to determine if she in fact proceeded with her entry of a plea, about two months ago, I guess it was now, in a legally appropriate and constitutionally appropriate manner, Your Honor. We advised her that certainly a review of the transcript of those proceedings might answer some of her questions for her. And, of course, acquiring that transcript may take some period of time, Your Honor . . . which would allow her to review the plea canvass that she went through with the court, Your Honor. . . .

"The Court: All right. What does paragraph two mean?

"[Defendant's Counsel]: I think paragraph two and paragraph three probably are connected, Your Honor. . . .

"[Defendant's Counsel]: [The defendant] is someone who is not particularly familiar with the criminal justice system. [She has] had one minor encounter previously, which did not involve any sort of protracted or lengthy

withdraw her guilty plea, claiming that she was denied effective assistance of counsel and that her plea was not knowing and voluntary.[6] The trial court heard argu-

negotiations or any great understanding of our criminal code or the distinctions to be made between various forms of homicide, Your Honor. She has had, since the entry of her plea, a period of time to begin to ask those questions of herself. And now she has recently asked them of us, and she wishes to have an opportunity to assess the answers that we've given her, to reassess the facts and the evidence of her case in order to make a judgment for herself whether or not she received appropriate and competent advice from us as her attorneys. And the way that I think that is related to paragraph three is that the recent events in . . . Massachusetts on a similar case have made her . . . reevaluate whether, in fact, the advice that her attorneys gave her and the position of the state here in Connecticut is fair and constitutes justice and was appropriate advice from counsel.

"The Court: Now, the issue of the situation in Massachusetts, Mr. [Patrick] Culligan, I presume, with all your experience—and that also includes Mr. [Kenneth] Simon—that you have explained to [the defendant] that whatever happens in Massachusetts has no indirect, remote or any bearing in relation to how this particular court or the judges in Connecticut act. We're talking about apples and oranges. We're talking about a different structure, legally. We're talking about different precedent. We're talking about different factual bases . . . in that case there was a trial. This is a plea. Basically, this court is indicating, very strongly, to [the defendant] that there is no correlation whatsoever in this particular courtroom concerning Massachusetts. What the judge did up there is based upon his reading of the [law]. Whether he's upheld, whether that is a proper decision is totally irrelevant to this particular court. I presume, Mr. Culligan, you have, in your vast experience, communicated the [differences] between the two courts to your client.

"[Defendant's Counsel]: That's an accurate presumption, Your Honor. I would just note for the record that in the court's comments the court did cover several items and reasons why there are distinctions to be made between the state of Massachusetts and the state of Connecticut and the results that occurred in that particular child homicide case and this particular child homicide case. But the fact that there are numerous reasons, I think, Your Honor, speaks to the reason [for] her request for a continuance . . . simply to consider that reasoning, which is much more common to the court and to the attorneys to perceive and to understand than I think it is for a layperson of limited education who has not achieved a high school education, Your Honor.

"The Court: And I think that's a fair assumption, Mr. Culligan . . . which is exactly what the court has stated on the record to [the defendant] very directly, that that particular issue will have no effect whatsoever on this particular court's decision concerning sentencing after plea."

[6] In anticipation of the defendant's motion to withdraw her plea, the trial court requested a transcript of its plea canvass.

ment on the motion on December 12, 1997, at which time the defendant's public defenders requested that the court appoint a special public defender to represent her with respect to her motion to withdraw her guilty plea,[7] particularly with respect to a hearing on the effective assistance of counsel issue.[8] The trial court refused

[7] The defendant's counsel had secured potential substitute counsel who was in the courtroom prepared to take over the defendant's case if the trial court had appointed him.

[8] The following colloquy took place between the trial court and defense counsel during argument on the defendant's motion.

"The Court: All right. Mr. [Patrick] Culligan [is] it your suggestion, although it's not in the motion, [that the way] to handle this particular problem is to appoint her other counsel to specifically inquire [into] (a) whether she felt that she had effective assistance of counsel and (b) . . . that counsel should be appointed and the court should conduct an independent hearing in deciding paragraph two? Is that your position?

"[Defendant's Counsel]: Yes, it is, Your Honor.

"The Court: All right. Anything further, Mr. Culligan, before the court rules on the motion?

"[Defendant's Counsel]: Yes, Your Honor. In support of . . . defendant's counsels' position, Your Honor . . . that at this juncture the court should appoint [the defendant] separate counsel and conduct a hearing as to claim number two. I would point out to the court that one of . . . the conundrums with defense counsel is that certain claims which [the defendant] is making with respect to the effective assistance of counsel may involve allegations made by her which her defense counsel may not agree with or may not be able to support factually, Your Honor, and there may be a factual dispute which the court will be called upon to adjudicate with respect to the second claim, Your Honor. And that's why it puts defense counsel presently in an awkward position attempting to represent her effectively as to her second claim that we denied her effective assistance of counsel.

"I will point out to the court, it's my opinion that our client has come to learn of . . . certain facts and concepts since the taking of the guilty plea which she believes she did not receive adequate and sufficient advice about from Mr. [Kenneth] Simon or [me], Your Honor, and that's why we feel that we have a conflict of interest in attempting to put forth that claim in a manner which an advocate for her should strenuously pursue, Your Honor.

"The Court: Let me follow this, Mr. Culligan. The person pleads guilty, [is] adequately canvassed by the court, [is] questioned not once, twice, but three times by the court as far as effective assistance of counsel, then comes back prior to sentencing, changes her mind for whatever reason, [and] you feel it's imperative [that] the court, once that issue is brought before the court . . . appoint another counsel and have a separate hearing concerning what breadth, Mr. Culligan? The breadth of the canvass, the breadth of the

to appoint substitute counsel and denied the defendant's motion to withdraw her guilty plea. The court then sentenced the defendant to consecutive terms of twenty years incarceration on the manslaughter charge and ten years on the risk of injury charge. This appeal followed.

The defendant's claim before us is that the trial court's failure to hold an evidentiary hearing on her motion to withdraw her guilty plea and its failure to appoint new counsel violated her rights to due process and effective assistance of counsel under the fifth, sixth and fourteenth amendments to the United States constitution, article first, § 8, of the constitution of Connecticut, and our rules of practice. See Practice Book § 39-19 et seq.[9]

---

probable cause hearing in this . . . particular case? How far do we go with it?

"[Defendant's Counsel]: It would seem to me, Your Honor, that it would go to those issues and those matters on which she was advised or not by her counsel with respect to the issues surrounding the significance of her guilty plea and its legal consequences and ramifications to her, Your Honor. I would point out to the court that just as the issue of whether a defendant's plea is knowingly and voluntarily made is both an opinion question as well as a question of legal conclusion, Your [Honor, the] question as to whether or not a defendant has received effective assistance of counsel is both a question of a person's opinion, which is, I think, what happened in this canvass and what often happens.

"The Court: Well, let me follow that further. Suppose I go down that alley [and] I appoint another lawyer, Mr. Culligan, [who] works [his] way through the process. I mean, where does that particular process end? I mean, do we get another lawyer to examine the other lawyer, rather the first lawyer, if things aren't working out the way the [defendant thinks] they should have worked out based upon subsequent circumstances? . . . Well, the court basically will deny the defendant's motion to withdraw. . . . The court has read the canvass. The court finds that [it was] knowingly and voluntarily made. The court denies the motion in total. The court feels that a hearing is unnecessary. The court is prepared to sentence at this particular period of time."

[9] Because the defendant briefed only her federal constitutional claim and her claims brought under the rules of practice, we will consider her state constitutional claim abandoned. See *State* v. *Joyce*, 229 Conn. 10, 16, 639 A.2d 1007 (1994).

"A guilty plea, once accepted, may be withdrawn only with the permission of the court. *State* v. *Rish*, 17 Conn. App. 447, 451, 553 A.2d 1145, cert. denied, 211 Conn. 802, 559 A.2d 1137, cert. denied, 493 U.S. 818, 110 S. Ct. 72, 107 L. Ed. 2d 38 (1989). The court is required to permit the withdrawal of a guilty plea upon proof of any ground set forth in Practice Book § [39-27]. *State* v. *Collins*, 207 Conn. 590, 597, 542 A.2d 1131 (1988); *State* v. *Lasher*, 190 Conn. 259, 265, 460 A.2d 970 (1983). Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused. *State* v. *Crenshaw*, [210 Conn. 304, 308–309, 554 A.2d 1074 (1989)]; *Szarwak* v. *Warden*, 167 Conn. 10, 23, 355 A.2d 49 (1974)." *State* v. *Morant*, 20 Conn. App. 630, 633, 569 A.2d 1140, cert. denied, 215 Conn. 818, 576 A.2d 547 (1990).

"It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. *State* v. *Childree*, 189 Conn. 114, 119, 454 A.2d 1274 (1983). By entering a guilty plea, the defendant waives his constitutional rights to a jury trial and to confront his accusers as well as his privilege against self-incrimination. *Boykin* v. *Alabama*, 395 U.S. 288, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Wright*, 207 Conn. 276, 542 A.2d 299 (1988). It is well settled that the record must affirmatively disclose that the defendant's choice was made intelligently and voluntarily. *State* v. *Childree*, supra, 120." (Internal quotation marks omitted.) *State* v. *Ramos*, 23 Conn. App. 1, 3–4, 579 A.2d 560 (1990).

"After a guilty plea is accepted but before the imposition of sentence the court is obligated to permit withdrawal upon proof of one of the grounds in [Practice Book § 39-27]. An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively establishes that the motion

is without merit. See *Fontaine* v. *United States*, 411 U.S. 213, 215, 93 S. Ct. 1461, 36 L. Ed. 2d 169 (1973)." *State* v. *Torres*, 182 Conn. 176, 185, 438 A.2d 46 (1980). Before the trial court, the defendant relied on two subsections of § 39-27 to withdraw her plea. Only the second reason is applicable in this appeal, namely that "[t]he plea resulted from the denial of effective assistance of counsel." Practice Book § 39-27 (4).

"In considering whether to hold an evidentiary hearing on a motion to withdraw a guilty plea the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. For the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true." *State* v. *Torres*, supra, 182 Conn. 185. The defendant's motion to withdraw contains no facts upon which she bases her claim that her plea was the result of ineffective assistance of counsel. See *State* v. *Crenshaw*, supra, 210 Conn. 311–12.

The defendant had the benefit of two public defenders representing her throughout the unconcluded probable cause hearing and the subsequent hearing in which she waived the probable cause hearing and pleaded guilty, and in the filing of motions for continuance and to withdraw her guilty plea. The defendant cited no facts in her motion or at oral argument before the trial court as to how or why counsels' representation was ineffective. The defendant now claims that the trial court abused its discretion in failing to grant her a continuance to develop facts to support her claim of ineffective assistance of counsel. Her counsel asked for a reasonable period of time in which to develop those facts, and our reading of the record discloses that the court gave the defendant a reasonable period of time to do so. The defendant's sentencing was originally scheduled to take place on November 26, 1997. The

court continued the sentencing until December 12, 1997, but the defendant failed to take advantage of that time to develop a factual basis to support her motion to withdraw her plea.

The defendant also claims that the trial court improperly abused its discretion by failing to appoint substitute counsel to press her ineffective assistance of counsel claim. At argument before the trial court, the defendant's counsel requested that substitute counsel be appointed because an inherent conflict had developed between the defendant and her counsel. Our reading of the transcript demonstrates that while the defendant was waiting to be sentenced, she learned of a case in Massachusetts concerning yet another tragic death of a very young child. Apparently, the defendant hoped that she could resolve her case in a similar manner. The trial court made a specific point of telling the defendant that the Massachusetts matter was of no consequence in Connecticut. It is readily apparent from the transcript that the defendant's counsel informed her of that as well. Defense counsel ascribed the conflict between them and the defendant to the defendant's lack of education and her unfamiliarity with the legal system. The trial court properly noted that defense counsel acceded to the defendant's wish for another lawyer without considering the foreseeable consequence, i.e., that the defendant would repeatedly look for a lawyer who could resolve her case in a manner similar to what occurred in the Massachusetts case. "Whether the circumstances warrant the appointment of new counsel is within the discretion of the trial court. . . . [A]bsent a factual record revealing an abuse of [the court's] discretion, the court's failure to allow new counsel is not reversible error." (Citation omitted; internal quotation marks omitted.) Id., 314. For this reason, the trial court properly exercised its discretion in denying the defendant's request for substitute counsel and

a hearing on her motion to withdraw her guilty plea due to ineffective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.