STATE OF CONNECTICUT *v.* JOSE
ANTONIO ALVARADO
(AC 33183)

DiPentima, C. J., and Beach and Bishop, Js.

 

Argued September 18—officially released December 11, 2012

*Cameron R. Dorman*, special public defender, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Brian K. Sibley, Sr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. This is an appeal from a judgment of conviction, rendered after the defendant, Jose Antonio Alvarado, pleaded guilty to the charge of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). The defendant claims that the trial court improperly denied his motion to withdraw his guilty plea and that the court should have dismissed his trial counsel and appointed substitute counsel to represent him in conjunction with his motion to withdraw his plea. We affirm the judgment of the trial court.

The following history is relevant to our discussion of the issues on appeal. On April 11, 2008, police were called to 43 North Third Street in Meriden to investigate a reported stabbing. Once there, the police determined that the defendant had been involved in an altercation with two other individuals, Seven Hawk Galler and Ganusquuah McManus, during which the defendant stabbed Galler, who died shortly thereafter as a result of his wounds.

Arrested and charged with murder, the defendant was represented in the Superior Court by public defender Michael Isko. The record reflects that on September 14, 2010, while jury selection was underway, the defendant entered an *Alford*[1] guilty plea to the reduced charge of manslaughter in the first degree in violation of § 53a-55 (a) (1) in conjunction with a plea agreement that he would receive a sentence of twenty years incarceration, suspended after fourteen years, followed by five years of probation. The defendant's sentencing was continued to November 12, 2010. Between the date of the defendant's plea and the scheduled sentencing date, however, the court received a letter from the defendant in which he indicated a desire to withdraw his guilty plea and to have his lawyer dismissed from representing him.[2] On November 12, 2010, the court noted that it had received the defendant's letter. The defendant, as well, reiterated his request to withdraw his guilty plea and for his counsel to be dismissed. Postponing an immediate hearing on the defendant's oral motions pending receipt

[1] Pursuant to *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a defendant may knowingly and voluntarily plead guilty to a charge and consent to the imposition of punishment without being required to admit his or her participation in the criminal conduct underlying the charge.

[2] Although the record reveals that the court received a letter from the defendant and the court commented briefly on the nature of the letter, the letter, itself, was not then made a court exhibit. Nor has the record been rectified to include the letter.

of a transcript of the plea hearing, the court, *Fasano, J.*, subsequently held a hearing on the defendant's motions on November 19, 2010. Following the hearing, the court, *Fasano, J.*, denied the defendant's motions and, on December 10, 2010, sentenced the defendant in accordance with the terms of the plea agreement. This appeal followed.

The defendant claims that his motion to withdraw his guilty plea should have been granted because his plea was neither voluntary nor knowing.[3] We disagree.

"[I]t is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . The . . . constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]." (Internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 780, 894 A.2d 963 (2006). "We, therefore, require the trial court affirmatively to clarify on the record that the defendant's guilty plea was made intelligently and voluntarily. . . . In order to make a

---

[3] The defendant also argues that his defense counsel should have obtained and utilized the hospital report from the date of the underlying incident, as the report would have shown that the defendant suffered serious injuries in the altercation, information he believed would have been helpful to a self-defense claim and that bears on the validity of his guilty plea. The difficulty with this claim is that the hospital record from the date of the incident has not been made part of the record prior to judgment and, since judgment, the record has not been rectified to include the subject hospital report. See Practice Book § 66-5. Therefore, we have no basis for determining whether the record would have been useful to the defendant and, accordingly, whether counsel should have obtained and utilized the hospital record as part of his representation of the defendant.

knowing and voluntary choice, the defendant must possess an understanding of the law in relation to the facts, including all relevant information concerning the sentence. . . . The defendant must also be aware of the actual value of any commitments made to him by the court . . . because a realistic assessment of such promises is essential in making an intelligent decision to plead guilty. . . . A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances. . . . [W]e conduct a plenary review of the circumstances surrounding [a] plea to determine if it was knowing and voluntary." (Internal quotation marks omitted.) *Almedina* v. *Commissioner of Correction*, 109 Conn. App. 1, 6, 950 A.2d 553, cert. denied, 289 Conn. 925, 958 A.2d 150 (2008).

The defendant claims that his plea was not knowing and voluntary on the ground that he did not have adequate time to consider the state's plea offer, he did not fully understand the law, his command of English was inadequate, the court should have ordered him to undergo a competency examination before accepting his plea and, finally, the court did not explain the elements of manslaughter in the first degree to him at the time of his plea.[4] We are not persuaded by these claims.

As to the defendant's claim regarding whether he was given an adequate opportunity to review the state's offer, the court, *Fasano, J.*, found at the time of the hearing on the defendant's motion to withdraw his plea that he had been given ample opportunity while the case was pending to either go to trial or to resolve his case by plea agreement. The court specifically found that the defendant's trial counsel had discussed the

[4] This claim is made in addition to the defendant's unreviewable claim that his counsel failed to obtain and provide him an opportunity to review the hospital record of his treatment on the evening of the incident giving rise to the criminal charge. See footnote 3 of this opinion.

possibility of a plea to manslaughter in August with him and that he had visited the defendant at his place of incarceration on Sunday, September 12, 2010, before his plea on September 14, 2010, to discuss the specifics of the pending offer. In short, the court found, with support from the record and without material dispute from the defendant as to the time periods involved, that the defendant had an adequate opportunity to consider the plea agreement before entering his plea. We find no fault with the court's assessment of this claim.

The defendant claims, as well, that the court should have granted his motion to withdraw his plea because he was confused, emotionally upset, unaware of the law and sufficiently unfamiliar with the English language so as to render his plea involuntary and unknowing. Other than the defendant's assertions at the hearing on his motion to withdraw, the record lends no support to these claims. To the contrary, the record of the September 14, 2010 plea canvass reflects that the court carefully canvassed the defendant to ensure that he understood not only what rights he was giving up by his plea, but also that he appreciated, as well, the consequences of his guilty plea. Additionally, at the beginning of the plea canvass and in response to the court's question, defense counsel indicated that the services of an interpreter would not be required. The record of the colloquy between the court and the defendant during the plea proceedings reflects that the defendant had no difficulty understanding and responding to the court's questions as they were posed to him. Finally, as to the defendant's claim that he did not adequately understand the law, the record reflects that the court made the defendant aware, in plain language, of the rights he was giving up by pleading guilty and that the prosecutor's recitation set forth the factual basis for the court's acceptance of the defendant's plea. Thus, other than the defendant's self-serving claims in this regard, the record is devoid

of any support for the defendant's claim that he was too unfamiliar with the English language or the law or that he was too confused and emotionally upset to knowingly and voluntarily plead guilty to the charge of manslaughter in the first degree.

The defendant further claims that the court should have ordered him to undergo a competency examination before being allowed to plead guilty to manslaughter. As acknowledged by the state: "[T]he guilty plea and subsequent conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions." *State* v. *Johnson*, 253 Conn. 1, 20, 751 A.2d 298, reconsideration denied, 254 Conn. 909, 755 A.2d 880 (2000).

The following additional procedural information is relevant to this claim. The record reflects that on July 2, 2008, at the request of the defendant, the court, *Damiani, J.*, ordered that he undergo a competency evaluation, and, thereafter, on August 4, 2008, pursuant to a stipulation by counsel, the defendant was found competent to stand trial. Thereafter, neither the defendant, his counsel, nor the prosecution raised any question regarding the defendant's competency. Furthermore, a review of the colloquy between the defendant and the court, *Fasano, J.*, during the plea canvass on September 14, 2010, fails to reveal any comments by the defendant that should have raised a doubt in the court's mind regarding the defendant's competency to proceed. The court has no duty, sua sponte, to order a competency examination for a defendant whose demeanor, comments or other behavior fail to suggest any questions of competency. See *State* v. *Monk*, 88 Conn. App. 543, 551, 869 A.2d 1281 (2005).

Finally, the defendant claims that the court should have granted his motion to withdraw the plea on the

ground that the court failed, during the plea canvass, to explain the essential elements of the crime of manslaughter in the first degree. The defendant's claim fails because the record reflects that he acknowledged to the court that his counsel had discussed the elements of manslaughter in the first degree as well as the evidence the state claimed to have in support of this charge.[5] Additionally, during the hearing on the defendant's motion to withdraw his guilty plea, his counsel represented to the court that he had gone over the elements of the charge of manslaughter with him on August 6, 2010, pursuant to the court's suggestion that both the prosecution and the defense consider an alternative solution to going to trial on the charge of murder.[6] The defendant did not refute counsel's representations.

"Moreover, [o]ur courts have stopped short of adopting a per se rule that notice of the true nature of the charge always requires the court to give a description of every element of the offense charged. . . . Rather, we have held that, [u]nder *Henderson* v. *Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976), even without an express statement by the court of the

[5] During the plea canvass, the following colloquy took place:

"The Court: Have you had a chance to discuss with your attorney the elements of this charge and the evidence the state claims to have with respect to each element?

"[The Defendant]: Yes, Your Honor.

"The Court: All right. So, you understand the elements and the evidence. Counsel, you're satisfied the defendant understands the elements of the offense and the evidence the state claims to have in connection with each of the elements?

"[Defense Counsel]: Yes, the evidence the state claims they have."

[6] During the court's colloquy with defense counsel, counsel stated: "And so, as a result of that—now, prior to that date, Your Honor, that September 12 date, on August 6, the state approached me about manslaughter—about—we discussed the charge of manslaughter. August 6 was the first day of my vacation. Despite that I had other things to do, I went to the jail and met, no less than two hours, with [the defendant], going over the very elements of the charge of manslaughter, how it fit into this and what the possible outcomes were."

elements of the crimes charged, it is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. . . . Thus, unless a record contains some positive suggestion that the defendant's attorney had not informed the defendant of the elements of the crimes to which he was pleading guilty, the normal presumption applies. . . . *State* v. *Lopez*, 269 Conn. 799, 802, 850 A.2d 143 (2004); accord *Bradshaw* v. *Stumpf*, 545 U.S. 175, 125 S. Ct. 2398, 2405–2406, 162 L. Ed. 2d 143 (2005) ([W]e have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. . . . Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.)." (Citations omitted; internal quotation marks omitted.) *State* v. *Reid*, supra, 277 Conn. 783–84. Here, we need not rely on that presumption, as defense counsel represented to the court that he had informed the defendant of the elements of the crime of manslaughter in the first degree and the defendant, in response to the court's questioning during the plea canvass, affirmed that he had been informed of the essential elements of the crime. Thus, the defendant's claim that the court failed to inform him of the essential elements of manslaughter in the first degree must fail.

In conjunction with his motion to withdraw his guilty plea, the defendant also asked the court to discharge his trial counsel and to appoint substitute counsel.[7] On

---

[7] The record reflects that on November 12, 2010, the defendant stated the following to the court: "I would like to let the court know, Your Honor, that

appeal, he claims that the court's denial of this request violated his constitutional right to effective counsel. This court has previously stated: "There can be no dispute that a criminal defendant has a constitutional right to the effective assistance of counsel . . . [and] that right, however, is not without limitation. For example . . . it is clear that the right to effective assistance of counsel does not include an unlimited opportunity to obtain alternate counsel. . . . Moreover, appellate tribunals look with a jaundiced eye at complaints regarding adequacy of counsel made on the eve of trial . . . . Such a request must be supported by a substantial reason and, [i]n order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances. . . . Inherent in these limitations is a concern for unwarranted interruptions in the administration of justice. While courts must be assiduous in their defense of an accused's right to counsel, that right may not be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. . . . The standard of review to be applied when reviewing a denial of a request for alternate counsel is whether the trial court abused its discretion in determining that a factual basis did not exist for granting the request." (Citations omitted; internal quotation marks omitted.) *State* v. *Miller*, 69 Conn. App. 597, 610–11, 795 A.2d 611, cert. denied, 260 Conn. 939, 802 A.2d 91 (2002). Additionally and in regard to the trial court's exercise of discretion, as we stated in *Miller*, "[t]he trial court is bestowed with broad

I would like to withdraw my plea, and also I would like to have a dismissal of my counsel." Rather than act on the defendant's oral motions at that time, the court continued the matter in order to obtain a transcript of the September 14, 2010 plea and canvass. Thereafter, on November, 19, 2010, the court conducted a hearing on the defendant's motions during which the defendant stated the following: "Your Honor, I would like to address the court respectfully, that you allow me to withdraw my plea and dismissal of my counsel, and allow me to obtain new counsel . . . ."

discretion in determining whether the circumstances warrant the appointment of new counsel. . . . [A]bsent a factual record revealing an abuse of that discretion, the court's failure to allow new counsel is not reversible error." (Internal quotation marks omitted.) Id., 612.

The basis for the defendant's claim that the court should have dismissed trial counsel appears to be two-fold: that counsel was ineffective for not having obtained a copy of the defendant's hospital record of his admission on April 11, 2008, the date of the incident in question, and, that counsel was burdened with an actual conflict of interest during the hearing on the motion to withdraw.[8] The defendant's first claim fails because, as noted, the report of the defendant's admission and treatment at the hospital on April 11, 2008, was not made an exhibit prior to judgment, and the record has not been rectified since judgment to include the report.[9] Therefore, we have no basis for assessing whether counsel was or was not ineffective for failing to utilize the contents of this report on behalf of the defendant in the trial court proceedings.

[8] The defendant did not file motions for the dismissal of counsel or for the appointment of new counsel. Rather, it appears from the record that the defendant orally moved for counsel's dismissal and the appointment of replacement counsel. The record reflects that at the November 19, 2010 hearing on the defendant's motion to withdraw his plea, the following colloquy took place:

"The Court: All right. Is there a written motion of any sort?

"The Clerk: No, Judge.

"[The Defendant]: Your Honor, I would like to address the court respectfully, that you allow me to withdraw my plea and dismissal of my counsel, and allow me to obtain new counsel . . . ."

[9] Indeed, at the November 19, 2010 hearing on the defendant's motions, a department of correction medical report was marked as a court exhibit. This report, however, relates to injuries the defendant received after falling from his bunk at his (then) place of incarceration on April 21, 2008, and not to injuries he may have received on April 11, 2008, the date of the underlying offense.

The second prong of the defendant's claim is that counsel should have been dismissed because he was burdened with an actual conflict. We are not persuaded. At the outset, we note that the mere expression of dissatisfaction with counsel and even an allegation of ineffectiveness does not, alone, warrant counsel's removal. See *State* v. *Johnson*, supra, 253 Conn. 1. To be sure, even where defense counsel supports a defendant's motion for the appointment of substitute counsel, the court has the discretion to deny appointment of new counsel in the absence of a record reflecting an actual conflict of interest. See, e.g., *State* v. *Jenkins*, 70 Conn. App. 515, 525 n.8, 800 A.2d 1200, cert. denied, 261 Conn. 927, 806 A.2d 1062 (2002); *State* v. *Cooper*, 55 Conn. App. 95, 106–107, 738 A.2d 1125, cert. denied, 251 Conn. 922, 742 A.2d 360 (1999); *State* v. *Casado*, 42 Conn. App. 371, 379, 680 A.2d 981, cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996).

While, in the present case, defense counsel made factual representations to the court during the hearing on the motion to withdraw the defendant's guilty plea regarding the timing and extent of his discussions with the defendant that were not supportive of the defendant's claims that he had not been given adequate time and information on which to decide whether to go to trial or resolve the charge by plea, defense counsel's representations did not, in fact, contradict the defendant's factual claims. Moreover, the record of the plea canvass refutes the defendant's self-serving claims that he did not have an adequate basis in knowledge and was too emotionally upset to be able to knowingly and voluntarily enter a guilty plea. Additionally, and contrary to the defendant's claim that his counsel was burdened with an actual conflict at the hearing on the motion to withdraw, the record reflects that defense counsel indicated that he was thoroughly prepared and willing to continue his representation of the defendant

through trial and that jury selection was aborted only after the defendant had informed him of his decision to accept the state's plea offer. Significantly, the record of the hearing on the defendant's motion to withdraw his plea and to dismiss counsel reveals that although defense counsel made representations to the court regarding his representation of the defendant that were not supportive of the defendant's claims, defense counsel did not, in any way, impede the defendant's presentation and, in one instance, acted to protect the defendant from a disclosure that counsel deemed would be prejudicial to the defendant.[10] See *State* v. *Johnson*, supra, 253 Conn. 55 ("while defense counsel did not join specifically in the defendant's motion [to withdraw the plea], the defendant had sufficient opportunity to advance his cause"). Given the absence of any basis in the record in support of the defendant's motion to withdraw his plea, the mere fact that defense counsel made factual representations to the court that were not supportive of the defendant's quest to withdraw his plea does not lead us to the conclusion that defense counsel should have been dismissed. Were we to draw the opposite conclusion, we could be confronted with an unending procession of lawyers forced from representation by mere unsubstantiated claims inconsistent with faithful representation. See *State* v. *Cooper*, supra, 55 Conn. App. 106 (trial court properly refused defendant's wish for another lawyer, despite defendant's assertions that conflict existed between her and defense counsel, because of foreseeable consequence that defendant would repeatedly look for lawyer who could resolve her case in a manner similar to that of an out-of-state case that was of no consequence here). While counsel

[10] At one point during the hearing, defense counsel stated: "In terms of being off the hook, we really, as the court is aware, we ordered that forensic testing and—I don't even want to—I'm not going to go into that because if that ever comes up again there's a strategic decision that, that could affect. It's very damaging for him to bring that up."

should not actively oppose a client's motion for dismissal, representations made by counsel that may not be supportive of a defendant's quest to withdraw a guilty plea do not inevitably evince a conflict of interest where the record otherwise provides no basis for granting a motion to dismiss counsel. Here, where the defendant was given a full and unimpeded opportunity to present his claims of inadequate representation as the basis for his motion to dismiss counsel, it was not an abuse of discretion for the court to have declined to dismiss counsel and appoint substitute counsel for the defendant.

Finally, it is apparent from the record, that, in denying the defendant's motion to withdraw his guilty plea, the court relied, considerably, on the colloquy between the court and the defendant during the plea canvass. In this regard, the court noted: "I'm satisfied the record will reflect in the September 14 proceedings [that] it's absolutely clear he knew what he was doing, he was pleading voluntarily and of his own free will and was satisfied with the representation he had, to that point." In denying the defendant's oral motion to dismiss counsel, the court stated as well: "I'm certainly satisfied that the defendant has been well represented. This is a matter that has been pending for quite a while. There's been very little in the way of complaint until after the plea. He was given every opportunity along the way to either try his case or consider resolutions of the matter. . . . So, with respect to the motion to withdraw his plea, that motion is denied. The motion to dismiss counsel is denied at this point. I think he should have representation of people who know him and have been through the entire process at the time of sentencing, so I think it's appropriate that he—that counsel not be dismissed for that purpose." On the basis of our review of the record, we find no fault with the court's exercise of discretion to deny the defendant's motion to dismiss

counsel, as the defendant failed to present any evidence evincing inadequate representation by defense counsel; nor does the record reflect that counsel was burdened by a conflict of interest necessitating the appointment of substitute counsel.

The judgment is affirmed.

In this opinion the other judges concurred.