# STATE OF CONNECTICUT *v.* VASHUN LEWIS
## (AC 20560)

Mihalakos, Dranginis and Callahan, Js.

Argued September 28, 2001—officially released January 22, 2002

*H. Owen Chace*, special public defender, for the appellant (defendant).

*Susan Maya,* certified legal intern, with whom were *Michael Dearington,* state's attorney, *Rita M. Shair,* senior assistant state's attorney, and, on the brief, *Richard L. Palombo, Jr.,* senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Vashun Lewis, appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics in violation of General Statutes § 21a-278 (b)[1] and sale of narcotics within 1500 feet of a public elementary school in violation of General Statutes § 21a-278a (b).[2] On appeal, the defendant claims that (1) there was insufficient evidence to convict him under § 21a-278a (b), (2) the trial court improperly denied his request to instruct the jury on mere presence and (3) the court improperly admitted an audiocassette tape into evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 19, 1998, Detective Ian Case, a member of the statewide narcotics task force, was assigned as an undercover agent to purchase narcotics at 200 Winthrop Avenue, New Haven, in the vicinity of the Vincent E. Mauro School. Case purchased four bags of crack cocaine from a black male who was wearing

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . sells . . . to another person any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ."

[2] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by . . . selling . . . to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. . . ."

camouflage style clothing. Case requested six more bags to complete the buy. Consequently, the black male shouted to someone in the house, and a second black male, who was wearing a tan jacket and a gold medallion, met the first black male and Case in the middle of the driveway and sold six bags of crack cocaine to Case.

As Case walked back to his unmarked police car, he described the two persons from whom he had purchased the drugs. The descriptions were relayed to the supervising officer, Detective Thomas Lokites, via a body microphone worn by Case. Minutes after Case left the scene, two uniformed police officers, Officer John Magoveny and Sergeant Raymond Hassett, arrived at 200 Winthrop Avenue. After speaking with two men fitting the descriptions provided by Case, Magoveny and Hassett met with Case and Lokites and told them that the second black male, who was wearing a tan jacket and gold medallion and who was on the property at 200 Winthrop Avenue, was the defendant. In the meantime, Case identified the defendant from a photographic array produced by Lokites containing approximately forty-one photographs.

Subsequently, the defendant was arrested on a warrant and charged in a substitute information with one count of sale of narcotics and one count of sale of narcotics within 1500 feet of a public elementary school. At the conclusion of the evidence, the jury returned a verdict of guilty on both counts, and the court sentenced the defendant to a total effective term of ten years incarceration. This appeal followed. Additional facts and procedural history will be provided as necessary.

I

The defendant first claims that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he had sold narcotics within 1500 feet

of a public elementary school. Specifically, he argues that there was not sufficient evidence that the actual distance from the crime scene to the school was less than 1500 feet. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 175, 778 A.2d 955 (2001).

"The scope of our factual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . *State* v. *Brown*, 235 Conn. 502, 510–11, 668 A.2d 1288 (1995)." (Emphasis in original; internal quotation marks omitted.) *State* v. *White*, 64 Conn. App. 126, 132–33, 779 A.2d 776, cert. denied, 258 Conn. 910, 782 A.2d 1251 (2001). "In this process of review, it does not diminish the probative force of the evidence that it consists . . . of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Carpenter*, 214 Conn. 77, 79, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992).

To find the defendant guilty of the sale of narcotics within 1500 feet of a public elementary school in violation of § 21a-278a (b), it was necessary for the jury to have found all of the following elements to be proven beyond a reasonable doubt: (1) the defendant sold a substance, (2) the substance the defendant sold was cocaine, (3) the defendant knew that the substance he sold was cocaine, and (4) the sale occurred within 1500 feet of property on which a public elementary school was located.

The defendant claims that § 21a-278a (b) should be strictly construed against the state in accordance with the rule of lenity.[3] He further argues that the state is required to prove the actual distance from the crime scene to the school. Direct numerical evidence, however, is not necessary. See, e.g., *State* v. *Crosby*, 36 Conn. App. 805, 820–21, 654 A.2d 371 (finding piece of paper to show gun was less than twelve inches sufficient), cert. denied, 232 Conn. 921, 656 A.2d 669 (1995).

The state's expert witness testified that the distance from the southeast corner of the property at 200 Winthrop Avenue to the northwest corner of the property of the Vincent E. Mauro School is 1430 feet. In addition, the state introduced into evidence a photograph of the property. The point of sale of the narcotics was marked on the photograph, which also showed two vehicles parked in the driveway to assist the jury in evaluating

---

[3] The defendant's reliance on the rule of lenity is misplaced. "[T]he touchstone of this rule of lenity is statutory ambiguity. . . . [W]e . . . [reserve] lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." (Internal quotation marks omitted.) *State* v. *Jason B.*, 248 Conn. 543, 555, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999); *State* v. *King*, 249 Conn. 645, 687 n.47, 735 A.2d 267 (1999). Because there is no ambiguity in the relevant statutory provision, the rule of lenity has no application in the present case.

how far the point of sale was from the property's southeast corner.

From that evidence, the jury reasonably could have inferred that the sale of the narcotics was committed within 1500 feet of a public elementary school and that, accordingly, the state had proved that element of § 21a-278a (b) beyond a reasonable doubt. It would have been preferable for the state to have measured the entire distance from the property line of the school to the point of sale; however, the jury reasonably could have found that the distance from the corner of 200 Winthrop Avenue to the point of sale was not more than seventy feet, thereby placing the sale within 1500 feet of the school.

## II

The defendant next claims that the court improperly refused to instruct the jury that it could not find him guilty because of his mere presence at the crime scene.[4] He argues that the court's refusal to grant his request to charge undermined the theory of his defense of misidentification and rendered the instructions inadequate as a proper guide to the jury. We disagree.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted

---

[4] The defendant requested the following charge: "You may not infer that the defendant is guilty in participating in criminal conduct merely from the fact that he was present at the time other people may have been committing a crime, merely from the fact that he was present at the time the crime was being committed and had knowledge it was being committed."

to the issues and sufficient for the guidance of the jury . . . [this court] will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Corbin*, 61 Conn. App. 496, 507, 765 A.2d 14, cert. granted on other grounds, 256 Conn. 910, 911, 772 A.2d 1124, 1125 (2001). Moreover, a mere presence instruction is not necessary when the jury is properly instructed on the elements of the crime and the evidence has established that the defendant's involvement went far beyond mere presence. *State* v. *Gasparro*, 194 Conn. 96, 111–13, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985).

The court's thorough instructions to the jury regarding identification and the elements of the crimes charged made a "mere presence" charge unnecessary. Taking the instructions in their entirety, we are satisfied that they were legally correct, sufficient for the jury's guidance and that no injustice resulted from the court's refusal to give the requested jury instruction. Furthermore, a review of the record and the evidence presented convinces this court that a "mere presence" charge was not warranted.

### III

The defendant's final claim is that the court improperly admitted an audiocassette tape into evidence.[5] He argues that the tape was inadmissible hearsay used to bolster Case's direct testimony. The state argues that the tape was admissible because (1) it was proper identification testimony and (2) the defendant opened the door to its admission. The state further argues, in the alternative, that even if the tape improperly was admitted into evidence, it was harmless error. We conclude

[5] The body microphone worn by Case was a small device that recorded voices and transmitted them to a receiving unit. The tape is the product of that transmission and contains a recording of Case's description of the two men while he was saying it.

that even though the tape may not have been admissible, its admission was harmless.

"It is well established that a trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Soto*, 59 Conn. App. 500, 505, 757 A.2d 1156, cert. denied, 254 Conn. 950, 762 A.2d 906 (2000).

The following additional facts and procedural history are relevant to our disposition of the defendant's claim. At trial, Case identified the defendant as the man from whom he had purchased six bags of crack cocaine. He further testified that the man was a dark-skinned black male with short dreadlock hair who was wearing a tan jacket and a gold medallion. Case also testified that he had picked the defendant's photograph out of a photographic array. The state first offered the tape for admission into evidence during Case's direct testimony. The court denied the admission of the tape because it was a prior consistent statement.

Subsequently, Lokites testified that he had met with Magoveny and Hassett, and had given them the description of the clothing and the physical description Case had provided so that they could go to the property and identify anyone who was on the property immediately after the sale of the narcotics. On cross-examination, Lokites was asked about the different types of surveillance tools available and those commonly used for undercover drug operations. During the state's redirect examination of Lokites, after a second offer, the court admitted the tape into evidence.

## A

The state first argues that the statements on the tape are admissible as statements of identification and are not subject to exclusion as hearsay. We disagree. The statements on the tape are not proper identification testimony, but rather prior consistent statements.[6]

"An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies. . . . Prior consistent statements of a witness are generally regarded as hearsay and are not admissible at trial, either for their truth or for the purpose of rehabilitating a witness' damaged credibility." (Citation omitted.) *State* v. *Hines*, 243 Conn. 796, 803, 709 A.2d 522 (1998); see also *State* v. *Harris*, 48 Conn. App. 717, 730, 711 A.2d 769, cert. denied, 245 Conn. 922, 717 A.2d 238 (1998). "In the normal course of events, the witness' story is not made more probable or more trustworthy by any number of repetitions of it. *State* v. *Valentine*, 240 Conn. 395, 412–13, 692 A.2d 727 (1997)." *State* v. *Harris*, supra, 730.

Although the general rule is that prior consistent statements of a witness are inadmissible, we have recognized exceptions in certain circumstances. "Major exceptions include using the prior consistent statement to rehabilitate a witness who has been impeached by a suggestion of bias or interest arising subsequent to the prior statement; see *State* v. *Jeffrey*, 220 Conn. 698, 713–14, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992); by a suggestion of recent contrivance; see *State* v. *Dolphin*, 178 Conn. 564, 568 n.5, 424 A.2d 266 (1979); by a charge of faulty recollection; see *State* v. *Anonymous (83-FG)*, 190

---

[6] The court initially ruled that the tape was inadmissible because "these recordings would be a prior consistent statement and, at this point, I find that it's premature to introduce them . . . ."

Conn. 715, 729, 463 A.2d 533 (1983); or by a prior inconsistent statement. See *State* v. *Torres*, 210 Conn. 631, 641, 556 A.2d 1013 (1989)." *State* v. *Harris*, supra, 48 Conn. App. 730–31. "Where the prior consistent statement becomes admissible, it may not be used as substantive evidence of the facts contained therein, but only to rehabilitate the credibility of the witness which has been attacked." *State* v. *Anonymous (83-FG)*, supra, 728.

Case identified the defendant during direct examination and testified that the defendant was wearing a tan jacket and a gold medallion at the time of the sale of the narcotics. The statement on the tape was simply a reiteration of that testimony. Furthermore, the state did not introduce the tape to rehabilitate a witness. Its only purpose was to bolster Case's previous testimony. The content of the tape was a prior consistent statement and, therefore, hearsay. Because the tape was not offered to rehabilitate Case's credibility, the court correctly excluded the tape in the first instance on those grounds.

B

The state next claims that the defendant opened the door to the admission of the tape. The state argued that the tape was offered into evidence to rebut the defendant's questioning concerning the failure of the police to use appropriate investigatory tools. It contends that the tape was a fair response to the defendant's claim that the police did not identify the defendant properly because of that failure. The state further argues that it could not prove positive identification by merely offering the tape without revealing its contents.

"Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the

same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. . . . The doctrine of opening the door cannot, of course, be subverted into a rule for injection of prejudice. . . . The trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence. . . . Thus, in making its determination, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 224 Conn. 196, 206–207, 618 A.2d 494 (1992).

The defendant's questions on cross-examination were limited to the investigatory tools that were commonly used in similar undercover drug operations and those that were available to the police department. He did not question any witness as to the contents of the tape. Even if the defendant opened the door to the admission of the tape, he did not open the door to the admissibility of its contents.

C

Finally, the state argues that if the admission of the tape was improper, it was harmless because the description of the defendant already was in evidence. We agree.

"Under the current and long-standing state of the law in Connecticut, the burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant. The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 638, 737 A.2d 404 (1999), cert. denied sub. nom. *Brown* v. *Connecticut*, 529 U.S. 1060,

120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000). Furthermore, "[t]he ruling of the trial court in order to constitute reversible error must have been both incorrect and harmful. . . . The question is whether the trial court's error was so prejudicial as to deprive the defendant of a fair trial, or, stated another way, was the court's ruling, though erroneous, likely to affect the result?" (Citations omitted.) *State* v. *Brown*, 199 Conn. 14, 25, 505 A.2d 690 (1986).

The defendant argues that because physical evidence, such as the tape, would be given greater weight by the jury, it is *conceivable* that the description on the tape of the drug sellers' clothing altered the outcome of the trial. The jury, however, had other evidence of the defendant's description with which it could find him guilty beyond a reasonable doubt. Case identified the defendant in court and testified on direct examination regarding his out-of-court identification from the photographic array. In addition, Magoveny and Hassett testified that they had identified the black man on the property who was wearing the tan jacket and gold medallion only minutes after the sale as the defendant.

The defendant has failed to sustain his burden of proving that it was more probable than not that the admission of the tape affected the outcome of the trial. Therefore, we find that any error was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.