STATE OF CONNECTICUT *v.* KHARI MILLER
(AC 21967)

Schaller, Dranginis and Daly, Js.

Argued February 19—officially released May 7, 2002

*Richard E. Condon, Jr.*, special deputy assistant public defender, for the appellant (defendant).

*Joy K. Fausey*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *David Zagaja*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Khari Miller, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and conspiracy to commit robbery in the first degree in violation of Gen-

eral Statutes §§ 53a-48 and 53a-134 (a) (2).[1] On appeal, the defendant claims that (1) he was convicted on the basis of insufficient evidence of identification, (2) the prosecutor improperly urged the jury to find, contrary to the evidence, that the state met its burden of identifying the defendant even if the jury did not believe the sole identifying witness, (3) there was insufficient evidence to support the conviction of conspiracy to commit robbery and (4) the court abused its discretion in denying his motion for new counsel. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 25, 1998, the defendant, Demont Murphy and Benjamin Smith met outside Murphy's home in Hartford. All three were wearing black clothing. Donna Williams and Rose Carter joined the men. Murphy went into his car and retrieved a gun that he put in the waistband of his pants. Williams told Murphy that the victim, Hubert Martin, had money in a wallet in his shoe and that they needed to go get it. Murphy asked Williams if she was "still down to do that," to which she responded, "Hell, yeah." Carter and Williams then went inside to use drugs, and the three men left for the victim's home.

The men knocked on the victim's door while the victim's wife, Letna Martin, was upstairs reading in bed. She heard her husband ask, "Who is it?" and heard the door open before there was any response. From the window she could see one man entering the house and one standing on the porch. She then heard her husband's muffled voice, as if someone's hand was covering his mouth, call out "help, murder, call the police." She immediately dialed 911. While she was still on the

[1] The defendant was acquitted of charges of murder in violation of General Statutes § 53a-54a and burglary in the first degree in violation of General Statutes § 53a-101 (a) (1).

telephone, she heard someone coming up the stairs. The defendant entered her room holding a gun and threw the telephone out of her hands. He grabbed her by the neck and dragged her downstairs into the living room where her husband was standing. She saw no one else in the room. Her husband then grabbed a small statue and threw it at the defendant, and the defendant shot the victim, killing him. The defendant then ran out the door. When Martin ran to the door to lock it behind him, she saw the three men running away. Approximately $550, which the victim kept in his wallet during the day and stored in one of his shoes at night, was stolen. The three men ran back to Murphy's house where Murphy said that "he didn't have to shoot him" and "he didn't really have any money . . . ." A boot matching the victim's boot at the murder scene was located in a field approximately 100 feet from the victim's front door.

Following the defendant's conviction, he was sentenced to forty-five years imprisonment on the felony murder count, fifteen years concurrent for robbery in the first degree and fifteen years concurrent for conspiracy to commit robbery in the first degree for a total effective sentence of forty-five years. This appeal followed. Additional facts will be set forth as necessary to resolve the issues on appeal.

I

The defendant first claims that he was denied his due process rights because no reasonable jury could have concluded that Martin identified the defendant beyond a reasonable doubt. Specifically, he claims that the evidence was insufficient to identify him as the perpetrator because Martin, the sole eyewitness, identified Smith as the shooter during a hearing in Smith's case, testified that the bedroom was generally dark and that she could not determine whether the shooter was heavy or thin

because she had panicked, and did not "look into the eyes" of the defendant. We do not agree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"The scope of our factual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . In this process of review, it does not diminish the probative force of the evidence that it consists . . . of evidence that is circumstantial rather than direct." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Lewis*, 67 Conn. App. 643, 646, 789 A.2d 519 (2002).

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably concluded that the defendant was the perpetrator. The record reveals that Martin selected the defendant's photograph from a photographic array and identified him in court. Although she stated that it was generally dark, she repeatedly testified that she was able to see him in her bedroom. She said, "I saw the person who came into my house." She also testified that there was

a small lamp in the bedroom that gave the room some light.

She testified on direct examination that she previously had identified Smith as the shooter. She maintained, however, then and during cross-examination that she "wasn't certain" and "wasn't sure" about that statement. The defendant also attempted to impeach Martin with her testimony during a hearing in Smith's case that she saw two people running from her home. She repeatedly stated, however, that she saw two people at the house, one inside and one outside, and three people running away.

Whether Martin's testimony was believable was a question solely for the jury. "It is . . . the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury." (Internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 256, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002).

In addition to Martin's testimony, the jury had the testimony of other witnesses before it. For example, Darlene Randolph testified that, as she was walking by, she witnessed the three men, including the defendant, gathered together at Murphy's house shortly before the shooting. She identified the defendant's photograph from a photographic array and identified him in court. She also testified that about one week after the shooting, the defendant approached her and made statements to her that she interpreted to mean that she was to "look out for" the defendant. Specifically, she testified, "And he told me, he said, you gonna stop goin' 'round tellin' people I had somethin' to do with that. You know. And I'm lookin' at him like—he said, you got my back,

right? He said, just show me love."[2] From Randolph's testimony, the jury reasonably could have concluded that the defendant was involved in the shooting and was in fact the shooter because he, in essence, asked her to cover for him. Rose Carter also testified that when Murphy came running back home with the two other men, she heard Murphy say that "he didn't have to shoot him . . . ." From this statement, the jury reasonably could have concluded that, although Murphy was seen in possession of a gun, he was not the perpetrator. As we have stated, "it does not diminish the probative force of the evidence that it consists . . . of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Lewis*, supra, 67 Conn. App. 646; 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 7c, p. 10.

We conclude that the jury had before it sufficient evidence from which it could have concluded that the defendant was the person that Martin saw shoot her husband. We will not second-guess the jury's conclusion. We therefore reject the defendant's claim that the jury had insufficient evidence to conclude beyond a reasonable doubt that the defendant was the perpetrator.

## II

The defendant next claims that he was denied the right to a fair trial because "the prosecutor repeatedly and improperly urged the jury to find the defendant guilty . . . even if the jury rejected Mrs. Martin's identification of the defendant as the shooter." Specifically, he claims that the prosecutor's closing argument was improper because the prosecutor argued that the defendant could be found guilty of robbery in the first degree and felony murder even if the jury found that the defen-

[2] Randolph further testified that the phrase "show me some love" meant that they were to "look out for" each other.

dant was not the shooter, but was a participant in the crime. Although the defendant concedes that the prosecutor's statements during closing argument were legally correct on the charge of felony murder, on appeal he claims that the argument presented a theory of culpability not relied on at trial. He contends that if the jury rejected Martin's identification of him as the shooter, it could not reasonably conclude in the alternative that he was a participant. We disagree.

The defendant's claim of prosecutorial misconduct was not preserved at trial. He therefore seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] It is well settled that "[w]e will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . . [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of the argument. . . . [M]oreover . . . [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . . *State* v. *Bonsu*, 54 Conn. App. 229, 238, 734 A.2d 596, cert. denied, 251

---

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

Conn. 909, 739 A.2d 1249 (1999)." (Internal quotation marks omitted.) *State* v. *Iannazzi*, 68 Conn. App. 456, 465–66, 791 A.2d 677 (2002); see also 1 B. Holden & J. Daly, supra, § 12, p. 76 & (Sup. 2001) § 12, pp. 69, 82.

Recently, our Supreme Court reiterated in *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002), that "[t]o prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process. . . . [P]rosecutorial misconduct of constitutional proportions may arise during the course of closing argument, thereby implicating the fundamental fairness of the trial itself . . . .

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. . . . Included among those factors are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) Id., 699–701.

"While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." (Internal quotation marks omitted.) Id., 701–702.

We conclude that the there was no prosecutorial misconduct and therefore we cannot say that the defendant was clearly deprived of his constitutional right to a fair trial. The prosecutor properly argued from evidence raised at trial that even if the defendant was not the shooter, he was a participant in the robbery and shooting of the victim. First, even if the jury concluded that the defendant had not shot the victim, it could have credited Martin's testimony to the extent that she identified him as one of the three men involved in the crime. Carter and Randolph also identified the defendant as one of the men involved. They placed the defendant with Smith and Murphy on the night of the incident and testified that all three men were dressed in dark clothing. Carter testified that Williams had told Murphy that the victim kept money in his shoe and that they should go get it. Both Carter and Randolph testified that the defendant and Smith were standing about four or five feet away from this conversation. Carter testified that after she went into the hallway of Murphy's house with Williams to use drugs, the three men returned, running from the direction of the victim's house. One of them was yelling, "[G]et the fuck out of here." In addition, after the killing, the defendant approached Randolph and made statements to her that she not say anything about his involvement in the crime, which statements the jury reasonably could have concluded indicated his consciousness of guilt.

The jury reasonably could have interpreted those statements as indicating that the three men planned to rob the victim that night. The cumulative weight of the evidence suggests that the defendant was, if not the shooter, at least a participant in the robbery and shooting of the victim. We conclude that it was proper for the prosecutor to draw the jury's attention to the reasonable inferences to be drawn from the facts before the jury

and that his closing argument, therefore, did not constitute prosecutorial misconduct.

## III

The defendant next claims that the evidence was insufficient to support the conclusion that he was guilty of conspiracy to commit robbery in the first degree. We disagree.

As we have stated, we invoke a two part test in reviewing sufficiency of the evidence claims. *State* v. *Lewis*, supra, 67 Conn. App. 646. Viewing the evidence in a light most favorable to sustaining the verdict, we must determine whether the jury reasonably could have concluded that the evidence and the inferences drawn therefrom established the defendant's guilt beyond a reasonable doubt. Id.

"Conspiracy is a specific intent crime, with the intent divided into two parts: (1) the intent to agree to conspire; and (2) the intent to commit the offense that is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also they intended to commit the elements of the offense. . . . *State* v. *Kenney*, 53 Conn. App. 305, 312, 730 A.2d 119, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999)." (Internal quotation marks omitted.) *State* v. *Vasquez*, 68 Conn. App. 194, 209, 792 A.2d 856 (2002); see General Statutes § 53a-48 (a); see also 1 B. Holden & J. Daly, supra, § 58f, p. 350 & (Sup. 2001) § 125c, p. 367. "[I]ntent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Miller*, 59 Conn. App. 406, 413, 757 A.2d 69 (2000), cert. denied, 255 Conn. 942, 769 A.2d 60 (2001); 1 B. Holden & J. Daly, supra, § 66c, pp. 474–75.

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Spearman*, 58 Conn. App. 467, 471–72, 754 A.2d 802 (2000).

The defendant challenges whether the state met its burden of proving the intent to agree to conspire. The evidence supporting our conclusion as to this element of conspiracy has been set forth in the previous section. We reiterate, however, that the defendant was seen on the night of the shooting congregating with Murphy and Smith while Murphy discussed robbing the victim with

Williams. All three were dressed in dark clothing. The three men, including the defendant, went in the direction of the victim's home. The defendant was identified as an individual inside the victim's home. The men, including the defendant, were seen running away from the direction of the victim's home. Approximately one week after the shooting, the defendant approached Randolph, and the jury reasonably could have infered from Randolph's testimony that the defendant attempted to conceal his involvement in the crime. On the basis of the evidence and the reasonable inferences drawn therefrom, we conclude that the jury reasonably concluded that the defendant intended to agree to the conspiracy and that he intentionally participated in a planned robbery of the victim.

## IV

The defendant's final claim on appeal is that the court improperly denied his request for the appointment of new counsel. Specifically, he argues that the request should have been granted because he was considering seeking a writ of habeas corpus based on his counsel's alleged ineffective assistance in a prior case, his counsel had made a motion to withdraw in that prior case and the attorney-client relationship had broken down. He also argues that the court made an inadequate and therefore improper inquiry into whether new counsel should be appointed and that the court improperly failed to inform him that if he decided to proceed pro se, he would be given access to a law library through standby counsel. We are not persuaded.

We must first consider whether the court conducted a sufficient inquiry into the defendant's request. The defendant argues that the court did not sufficiently inquire about his complaints and that the court reversed the proper order of questioning by first asking the defendant whether he desired to represent himself and then

asking why he wanted new counsel. With respect to the order of questions, the defendant provides no authority that mandates a specific order of questioning for purposes of this inquiry. We conclude that this is a distinction without a difference. As to the court's obligation to conduct an inquiry into the defendant's request for new counsel, our standard of review is an abuse of discretion standard. *State* v. *Hansen*, 39 Conn. App. 384, 399, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). "A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints." Id.

Our review of the record reveals that the court questioned the defendant at length as to his reasons for requesting new counsel. The defendant responded that he had problems with counsel in a prior case and that counsel had made a motion to withdraw from representation in that case. Although the defendant said that they had since worked those problems out, he explained that "on the performance of the last case, I would expect that in this next case it would be not too much a different thing. It wouldn't be too much of a difference and I think I need not bet—like—well, can I say better representation." The defendant did not offer any reason for his dissatisfaction with his counsel in the present case. Instead, he agreed with the court that counsel was a competent attorney. We conclude therefore that the court conducted a sufficient inquiry.

We also conclude that the court did not abuse its discretion in denying the defendant's request for new counsel. "There can be no dispute that a criminal defendant has a constitutional right to the effective assistance of counsel . . . [and] that right, however, is not without limitation. For example . . . it is clear that the right to effective assistance of counsel does not include an unlimited opportunity to obtain alternate counsel."

(Citations omitted; internal quotation marks omitted.) *State* v. *High*, 12 Conn. App. 685, 690, 533 A.2d 1217 (1987), cert. denied, 207 Conn. 801, 540 A.2d 74 (1988). "Moreover, appellate tribunals look with a jaundiced eye at complaints regarding adequacy of counsel made on the eve of trial . . . . Such a request must be supported by a substantial reason and, [i]n order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Fisher*, 57 Conn. App. 371, 382, 748 A.2d 377, cert. denied, 253 Conn. 914, 754 A.2d 163 (2000). "Inherent in these limitations is a concern for unwarranted interruptions in the administration of justice. While courts must be assiduous in their defense of an accused's right to counsel, that right may not be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." (Internal quotation marks omitted.) *State* v. *Patavino*, 51 Conn. App. 604, 609, 724 A.2d 514, cert. denied, 249 Conn. 919, 733 A.2d 236 (1999). "The standard of review to be applied when reviewing a denial of a request for alternate counsel is whether the trial court abused its discretion in determining that a factual basis did not exist for granting the request." (Internal quotation marks omitted.) *State* v. *Guitard*, 61 Conn. App. 531, 536, 765 A.2d 30, cert. denied, 255 Conn. 952, 770 A.2d 32 (2001).

The defendant concedes, and we agree, that instituting a habeas corpus claim based on ineffective assistance of counsel against a defendant's counsel does not necessarily require the appointment of new counsel. See *State* v. *Vega*, 259 Conn. 374, 391, 788 A.2d 1221 (2002) (filing of grievance insufficient to implicate violation of defendant's sixth amendment rights); *State* v. *Watson*, 198 Conn. 598, 610, 504 A.2d 497 (1986) (unsubstantiated allegations of ineffective assistance and conflict of interest do not per se require court to disqualify

counsel); *State* v. *Beckenbach*, 198 Conn. 43, 50, 501 A.2d 752 (1985) (unsubstantiated allegations of ineffective assistance of counsel do not per se require court to grant continuance). The defendant offered no evidence indicating that counsel's representation was ineffective or otherwise indicating a substantial reason to grant the defendant's request. The defendant's claim that the attorney-client relationship had broken down is further undermined by the defendant's statement that he and his counsel were able to "work out their differences," notwithstanding counsel's motion to withdraw from the prior case. "The trial court is bestowed with broad discretion in determining whether the circumstances warrant the appointment of new counsel. . . . [A]bsent a factual record revealing an abuse of that discretion, the court's failure to allow new counsel is not reversible error." (Citation omitted; internal quotation marks omitted.) *State* v. *Casado*, 42 Conn. App. 371, 379, 680 A.2d 981, cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996). We conclude that the factual record of this case does not warrant reversal.

Finally, the defendant asserts that the court improperly failed to inform him that if he chose to proceed pro se, he would be given access to legal materials through standby counsel. The defendant argues that he "clearly and unequivocally expressed his right to self-representation, which request was conditioned on one basis: access to a law library."[4] We cannot agree.

---

[4] The defendant cites the following colloquy in support of the invocation of his right to self-representation:

"The Court: Well, let me address a question or two to [the defendant]. Do you prefer to represent yourself, sir?

"The Defendant: Well, there is no possible way I can represent myself, Your Honor, because I don't have access to a law library and any of the legal paperwork that I need to represent myself in the case like this, and I don't have the state's evidence or I didn't have a motion to discovery filed yet, so I don't know exactly what the state has against me, so no, I couldn't represent myself. I would need another counsel.

* * *

"The Court: Well, what I am going to do, then, based on what I've heard,

Our reading of the transcript reveals that the court was ready to make the proper inquiry pursuant to Practice Book § 44-3 to determine if the defendant should be permitted to waive his right to counsel. The defendant, however, clearly stated that he did not want to proceed pro se. Rather, he desired to have the court appoint substitute counsel. Moreover, we reiterate that standby counsel has a limited purpose. Our Supreme Court has stated: "A criminal defendant who knowingly and intelligently waives the right to counsel and who has been appointed standby counsel is not constitutionally entitled to access to a law library. Rather, the appointment of standby counsel satisfies the state's obligation to provide the defendant with access to the courts." *State* v. *Fernandez*, 254 Conn. 637, 658, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001). In *Fernandez*, the court further stated that "the role of standby counsel is essentially to be present with the defendant in court and to supply the limited assistance provided for in Practice Book § 44-5 . . . [and] that standby counsel does not, however, have any obligation to perform legal research for the defendant." Id. We therefore are not persuaded that the court improperly failed to inform the defendant that he

---

I haven't heard any problems at all with representation in this case. The alternative at this point would be to represent yourself, but you said you don't want that, and even if you did, I would be compelled to go through a fairly lengthy examination on the record of your experience and so forth, but given your representation that you are not comfortable representing yourself, then I won't go through that.

"The Defendant: But, Your Honor, not the point that I wouldn't be comfortable representing myself, *it is just that [in] the facility that I am located, I don't have the access to a law library or the facilities for*—

"The Court: But as I understand it, *for whatever reason,* you don't want to represent yourself, is that correct.

"The Defendant: *I would if I could. If I could, I would.*

"The Court: Well, do you want to represent yourself? If that is your request, I will go through a—

"The Defendant: No, my request is that I would like another attorney." (Emphasis added.)

had a right of access to a law library through standby counsel because he is afforded no such right.

The judgment is affirmed.

In this opinion the other judges concurred.