# STATE OF CONNECTICUT *v.* HECTOR ESTRADA
## (AC 21107)

Mihalakos, Dranginis, and Hennessy, Js.

Argued January 15—officially released July 30, 2002

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Jeffrey M. Lee*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Hector Estrada, appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] sale of narcotics within 1500 feet of a school in violation of General Statutes § 21a-278a (b),[2] conspir-

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

[2] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. . . ."

acy to sell narcotics by a person who is not drug-dependent in violation of General Statutes §§ 53a-48 (a)[3] and 21a-278 (b), and conspiracy to sell narcotics within 1500 feet of a school in violation of General Statutes §§ 53a-48 (a) and 21a-278a (b). The judgment of the trial court is affirmed in part and reversed in part.

The defendant claims that the court improperly (1) found that there was sufficient evidence to support his conviction of sale of narcotics in violation of §§ 21a-278 (b) and 21a-278a (b), (2) found that the drugs tested by the state laboratory were the same drugs purchased by an undercover officer, (3) admitted into evidence two glassine bags that tested positive for heroin, (4) instructed the jury on the definition of sale pursuant to General Statutes § 21a-240 (50)[4] and (5) violated his constitutional rights to be free from double jeopardy by convicting and sentencing him for two different crimes: Conspiracy to sell narcotics and conspiracy to sell narcotics within 1500 feet of a school, where he argues that the two conspiracies arose from the same incident and were the same offense for double jeopardy purposes.

The jury reasonably could have found the following facts. On July 27, 1999, an undercover officer, Edward Azzaro, a member of the statewide cooperative crime control task force, posed as a drug addict as part of an undercover operation to buy illegal narcotics. As part of this operation, Azzaro, dressed in street clothing, was given two ten dollar bills and was driven in an

---

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] General Statutes § 21a-240 (50) provides: " 'Sale' is any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ."

unmarked police vehicle to a location a short distance away from Poplar Street and Grand Avenue in New Haven.[5] The target of the undercover operation at Poplar Street and Grand Avenue was a suspected drug dealer named Wilfredo Rivera, who was known frequently to wear a blue shirt with a large star on it. When Azzaro arrived at the surveillance area, he did not see Rivera, but he did see the defendant exiting a store on the corner of Poplar and Grand. The two men made eye contact, and the defendant asked Azzaro, "How many do you want?" Azzaro interpreted the question to mean how many individually wrapped pieces of narcotics did he want to purchase. Azzaro responded, "Two." The defendant then offered to give Azzaro a "deal" by selling him a "bundle," which is normally ten to fifteen pieces of individually wrapped cocaine or heroin, for sixty dollars. Azzaro responded that he had only twenty dollars. The defendant replied that that was not enough and said that he would be around for an hour.

After their conversation ended, Azzaro walked down Grand Avenue, toward a prearranged pickup area. As he was walking, he saw the target of the surveillance, Rivera. Rivera and Azzaro made eye contact. Rivera asked Azzaro if he wanted "dope," a street term for heroin, to which Azzaro replied affirmatively. Rivera then said, "Yes," and gestured for Azzaro to follow him back toward Poplar Street. As the two walked back toward Poplar Street, Rivera was looking around in a manner that led Azzaro to believe that Rivera was searching for someone. Rivera began to walk down a side street, but stopped when he saw the defendant.

---

[5] Other members of the statewide cooperative crime control task force videotaped the area of Poplar Street and Grand Avenue while Azzaro was being dropped off nearby. They continued to videotape the surveillance area the entire time Azzaro was operating undercover there. Their videotape was admitted into evidence at trial as state's exhibit two.

Rivera then changed direction and began to walk ahead of Azzaro toward the defendant. Rivera walked up to the defendant, and the two walked side by side for a few seconds. The detectives, who were videotaping Azzaro, Rivera and the defendant, caught on film the defendant's right hand pass next to Rivera's left hand. The videotape also showed that prior to this, Rivera was swinging his arms with his hands open.

At trial, Azzaro testified that he believed that the defendant had given Rivera narcotics during that "contact," even though he did not personally witness the transfer of narcotics from the defendant to Rivera, and did not know if Rivera possessed drugs when he first encountered him. After Rivera's left hand passed next to the defendant's right hand, Rivera immediately turned around, and Azzaro saw two glassine bags in Rivera's left hand where previously he had seen none. Rivera handed Azzaro the bags, and Azzaro gave him the twenty dollars. Inside the bags was a white powdery substance that later tested positive for heroin.

The videotape revealed that, as Azzaro was leaving the area, Rivera walked back to the defendant and, after briefly talking to him, took money out of his pants pocket and tried to give some of it to the defendant. The defendant did not take the money, but gestured for Rivera to follow him around the corner to the side of a building. The defendant was not arrested that day.

The area of Poplar Street and Grand Avenue where the defendant, Rivera and Azzaro exchanged the heroin was less than 400 feet from the real property comprising a public elementary school. Additional facts will be set forth as necessary.

## I

The defendant first argues that the court improperly found that sufficient evidence existed to convict him

of sale of narcotics in violation of §§ 21a-278 (b) and 21a-278a (b). Specifically, the defendant claims that the court improperly denied his motion for a judgment of acquittal because the evidence presented at trial was insufficient to prove beyond a reasonable doubt that there was a delivery of drugs from the defendant to Rivera and an exchange of money from Rivera to the defendant. We disagree.

Initially, we note that to the extent that this sufficiency claim is unpreserved at trial, it is reviewable pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] "Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof. . . . Our Supreme Court has stated that *Jackson* v. *Virginia,* [443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)], compels the conclusion that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding.*" (Citation omitted; internal quotation marks omitted.) *State* v. *Jefferson,* 67 Conn. App. 249, 254, 786 A.2d 1189 (2001), cert.

---

[6] Under *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40.

"The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. . . . This court may dispose of the claim on any one of the conditions that the defendant does not meet. . . . *State* v. *Jones,* 65 Conn. App. 649, 653, 783 A.2d 511 (2001)." (Internal quotation marks omitted.) *State* v. *Dudley,* 68 Conn. App. 405, 414 n.3, 791 A.2d 661, cert. denied, 260 Conn. 916, 797 A.2d 515 (2002).

denied, 259 Conn. 918, 791 A.2d 566 2002. Thus, we conclude that there is no practical reason for engaging in a *Golding* analysis of a claim based on the sufficiency of the evidence, and we will thus review the defendant's challenge to the sufficiency of the evidence as to his conviction of sale of narcotics in violation of §§ 21a-278 (b) and 21a-278a (b) as we do any properly preserved claim. See id.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . The scope of our factual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . In this process of review, it does not diminish the probative force of the evidence that it consists . . . of evidence that is circumstantial rather than direct." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Lewis*, 67 Conn. App. 643, 646, 789 A.2d 519 (2002).

Construing the evidence in the light most favorable to sustaining the verdict, we conclude that despite the fact that Azzaro did not testify that he saw the defendant actually hand the narcotics to Rivera, the jury reasonably could have inferred from the videotape of the "con-

tact" between Rivera's left hand and the defendant's right hand, which also showed the appearance of two glassine bags in Rivera's hand immediately after the "contact," that the defendant had given Rivera the two glassine bags that later tested positive for heroin, and that this and other evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt. The lack of direct evidence of the transfer does not make the jury's determination any less logical or reasonable. The circumstantial evidence of the transfer can be and is a proper basis for the jury's determination that the defendant was guilty beyond a reasonable doubt. Accordingly, the judgment is affirmed as to this claim.

## II

The defendant next argues that there was insufficient evidence that the two glassine bags tested by the state toxicology laboratory were the same ones purchased by Azzaro during the undercover operation. Specifically, the defendant argues that the state did not establish a proper chain of custody to prove the identity of the bags. We are not persuaded.

Initially, we note that the defendant did not preserve this claim during trial and now seeks to prevail on appeal pursuant to *State* v. *Golding,* supra, 213 Conn. 239–40.[7] We will review the defendant's claim because the record is adequate and the claim is of constitutional magnitude. The defendant cannot prevail on this claim, however, because he fails to satisfy the third prong of *Golding,* in that he has failed to show that the alleged constitutional violation clearly existed and clearly deprived him of a fair trial.

On appeal, the defendant argues that the state had to establish an unbroken chain of custody in order to prove that the two glassine bags tested were actually

[7] See footnote 6.

those purchased by Azzaro. The defendant maintains that the state did not meet this burden and that there was a gap in the chain of custody, which breaks the link to the defendant and mandates that the charges against him be vacated. In response to this claim, the state argues that it has met its burden to proof as to the chain of custody because it demonstrated by a reasonable probability that the glassine bags were not tampered with and, thus, the bags tested were the same bags that Azzaro had purchased from the defendant via Rivera.

Because this claim arises out of an evidentiary ruling made at trial, the following additional facts are necessary to address this claim. During trial, to admit the narcotics into evidence, the prosecution called Azzaro and Richard Pinder, director of the toxicology laboratory for the state department of public health, to establish the chain of custody of the two glassine bags. Azzaro testified that after he had returned to meet the other members of the task force at a predetermined location at the end of the undercover operation, he filled out an evidence tag, placed the two glassine bags that he had received from Rivera in a plastic bag, affixed the evidence tag to the bag and gave it to Detective Antonio Lopez. Azzaro also testified that the evidence was in the same condition at trial as it was when he gave it to Lopez, except for a seal bearing the number 99-C-2596 that had been added by the state toxicology lab after it tested the bags. The state then called Pinder, who testified that lab notes and a lab journal revealed that the lab received a sealed bag containing two glassine bags with a powdery substance from Lopez the day after the undercover operation and that the sealed bag shown to him at trial was the same bag that was received and tested by the lab.

The defendant argues that the prosecution's failure to call Lopez to testify about what happened to the two

glassine bags between the time Azzaro gave them to Lopez and the time they were tested by the toxicology lab resulted in a gap in the chain of custody. With respect to this argument, the trial court determined, on the basis of the testimony of Azzaro and Pinder, that the state sufficiently established a chain of custody for the evidence even without the testimony of Lopez. We agree.

"As a general rule, it may be said that the prosecution is not required or compelled to prove each and every circumstance in the chain of custody beyond a reasonable doubt . . . . It is not necessary for every person who handled the item to testify in order to establish the chain of custody. It is sufficient if the chain of custody is established with reasonable certainty to eliminate the likelihood of mistake or alteration. . . . The state's burden with respect to chain of custody is met by a showing that there is a reasonable probability that the substance has not been changed in important respects. . . . The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Lowe*, 61 Conn. App. 291, 303, 763 A.2d 680 (2001).

In the present case, the court reasonably could have found that the state established the requisite chain of custody based on Azzaro's testimony that the evidence was in substantially the same condition at trial as it was when he had given it to Lopez. "In *State* v. *Burns*, 23 Conn. App. 602, 615, 583 A.2d 1296 (1990), this court concluded that '[n]o evidence was presented indicating that the evidence in this case was tampered with. The court was well within the limits of its discretion in reasonably concluding that the evidence was not tampered with, either during transportation or while at the state lab where it would be highly unlikely that

"intermeddlers" would tamper with the evidence.'" *State* v. *Barnes*, 47 Conn. App. 590, 596, 706 A.2d 1000 (1998).

In *State* v. *Barnes*, supra, 47 Conn. App. 596–97, this court further held "that mere gaps of time between the various steps in seizing, transporting, delivering, storing and analyzing the evidence, in the absence of an affirmative showing that the evidence was in some way tampered with, misplaced, mislabeled or otherwise mishandled, are insufficient to establish abuse of the court's discretion in admitting the evidence." The defendant's mere speculation in the present case that the evidence was tampered with during the time that Lopez had it in his possession is insufficient to show that the court improperly found that the two glassine bags tested by the state toxicology laboratory were the same bags that Azzaro obtained from the defendant via Rivera. Thus, the defendant fails to satisfy the third prong of *Golding* because he has failed to prove that a constitutional violation clearly existed and deprived him of his constitutional right to a fair trial.

### III

The defendant further argues that the court improperly admitted into evidence the two glassine bags that tested positive for heroin. He claims that the bags were inadmissible because of the same alleged gap in the chain of custody that we addressed in part II of this opinion. As we said in part II, the chain of custody was sufficiently established, and, in light of this fact, the defendant cannot prevail on his claim that the bags were inadmissible. See *State* v. *Johnson*, 162 Conn. 215, 229–33, 292 A.2d 903 (1972).

### IV

The defendant next argues that the court improperly instructed the jury on the definition of sale pursuant

to § 21a-240 (50).[8] Specifically, the defendant claims that the court's erroneous jury instruction allowed the jury to convict him of sale of narcotics on the basis of evidence of possession alone and, thus, deprived him of his due process rights by lessening the state's burden of proving each and every element of the charged offense beyond a reasonable doubt. We are unpersuaded.

The defendant did not preserve this claim at trial and now seeks our review under *State* v. *Golding,* supra, 213 Conn. 239–40, or the plain error doctrine. See Practice Book § 60-5. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Dudley,* 68 Conn. App. 405, 414, 413–14 n.3, 791 A.2d 661, cert. denied, 260 Conn. 916, 797 A.2d 515 (2002). The defendant's claim satisfies the first prong of *Golding* because the record is adequate for review. It also satisfies the second prong of *Golding* because it alleges an improper jury instruction on an essential element of the crime charged, which is a violation of a fundamental right. See *State* v. *Allen,* 216 Conn. 367, 383, 579 A.2d 1066 (1990) (improper jury instruction on essential element of crime violates defendant's due process rights). Accordingly, we will review the defendant's claim as the record is adequate for review and the alleged violation is of constitutional magnitude involving the defendant's constitutional due process right to proper jury instructions on the essential elements of a crime. We conclude, however, that this claim fails to satisfy the third prong of *Golding* because the defendant has failed to show that the alleged violation clearly exists and clearly deprived him of a fair trial.

"We note, preliminarily, that our analysis of the defendant's claim begins with a well established standard of

---

[8] See footnote 4.

review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Liebowitz*, 65 Conn. App. 788, 808, 783 A.2d 1108, cert. denied. 259 Conn. 901, 789 A.2d 992 (2001).

The defendant argues that "the court instructed the jurors that a sale was 'any form of delivery,' but then essentially negated its own instruction by saying '[i]t is enough if the defendant possessed the drugs for the purpose of any form of delivery, which includes barter, exchange or gift.' " He claims that this statement prejudiced his case because it lessened the state's burden of proof. He argues that as a result of the combination of the court's statement and Azzaro's testimony describing the defendant's offer to sell a bundle, it was reasonably possible that the jury was misled to believe that the testimony about Azzaro's initial contact with the defendant was enough to satisfy the court's definition of sale.

The part of the court's statement to which the defendant objects cannot be judged apart from the jury instruction as a whole. In *Barrese* v. *DeFillippo*, 45 Conn. App. 102, 109, 694 A.2d 797 (1997), this court held that "[a jury] charge . . . is to be read as a whole without the dissection of its parts. It will not be the source of reversible error absent a determination that the probable effect of the charge was to lead the jury to an incorrect verdict. . . . The charge must be exam-

ined to determine whether it fairly presents a case to the jury so that no injustice results and it is not to be examined with a legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements." (Internal quotation marks omitted.)

In the present case, the court's statements regarding the element of delivery, which followed the language now objected to by the defendant, demonstrated that the court did not instruct the jury that it could convict the defendant if it found that he was in possession of narcotics with the intent to deliver them, but rather that to convict the defendant, the jury must find that a delivery occurred regardless of whether the defendant received value for the narcotics or if he delivered the narcotics with the intent to make them a gift.

Reading the instructions as a whole, we conclude that the jury was properly instructed on the crime of sale of narcotics and, thus, no injustice to the defendant resulted by reason of the court's instructions. The defendant's claim, therefore, fails to satisfy the third prong of *Golding*.

V

The defendant next claims that the court improperly failed to conclude that the conviction of conspiracy to sell narcotics and conspiracy to sell those same narcotics within 1500 feet of a school violated his state and federal constitutional rights to be free of double jeopardy. Although the defendant concedes that this claim was not properly preserved at trial, he argues that it nonetheless is reviewable under *Golding*. We agree.

The record is adequate for review, and the defendant's claim is of constitutional magnitude because it alleges a violation of the defendant's fundamental right to be free of double jeopardy. Accordingly, we will review this claim under *Golding*. In the present case,

the defendant's claim also satisfies the third prong of *Golding* because it is clear from the record that a double jeopardy violation exists. Finally, the defendant's claim satisfies the fourth and final prong of *Golding* review and, therefore, the two sentences cannot stand.

In the interest of judicial conformity, we adopt the remainder of our *Golding* analysis from our recent opinion, *State* v. *Vasquez*, 66 Conn. App. 118, 126–27, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001), in which we addressed an identical claim. "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute. . . . For such a violation, only the single penalty prescribed by the statute can be imposed. . . . [T]he defendant's claim satisfies the fourth prong of the *Golding* analysis because the state has failed to demonstrate harmlessness of the alleged double jeopardy violation beyond a reasonable doubt. The defendant was convicted of two separate conspiracy offenses and ultimately was penalized for both offenses. In a case such as this, however, only the single penalty prescribed by the statute can be imposed." (Citations omitted; internal quotation marks omitted.) Id., 127. Thus, as this court determined in *Vasquez*, the court's sentences on the two separate conspiracy convictions were not harmless and cannot stand.

The judgment is reversed in part and the case is remanded with direction to merge the conviction on the two conspiracy offenses and to vacate the sentence for one of them. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.